Filed 12/12/13  Costa v. Sirimanne CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDUARDO COSTA, | B237130 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC436209) |
| v. | |
| BENEDICT SIRIMANNE et al., | |
| Defendants and Appellants. | |

APPEALS from a judgment and orders of the Superior Court of Los Angeles County.  J. Stephen Czuleger, Judge.  Affirmed in part and reversed in part with directions.

Robert Hindin & Associates and Robert M. Hindin for Plaintiff and Appellant.

Benedict Sirimanne, in pro. per.; Law Offices of Joseph P. Wohrle and Joseph P. Wohrle for Defendants and Appellants.

———————————

Eduardo Costa appeals from a judgment entered after a court trial, contending that the trial court abused its discretion in denying Costa's motion to amend his complaint to add Sol Dominicana Airlines (Sol) as a plaintiff. Benedict Sirimanne and CSDS Aircraft Sales & Leasing, Inc. (CSDS), also appeal, contending that insufficient evidence supports the judgment in favor of Costa and against Sirimanne as individuals in Costa's breach of contract action and that the trial court erred in denying their motion for attorney fees.[1] We conclude that the court erred in denying Costa's motion to amend to add Sol as a plaintiff to the complaint because Sirimanne and CSDS fail to articulate any facts or legal theories that would have been changed by the proposed amendment and Sirimanne and CSDS would not have been prejudiced by the proposed amendment. We also conclude that sufficient evidence supports the judgment in favor of Costa and against Sirimanne as individuals. We reverse with directions to the trial court to issue an order allowing Costa to amend the complaint to add Sol as a plaintiff. Because we are reversing the trial court's order denying Costa's motion to amend the complaint with respect to the causes of action regarding the Lease/Purchase Agreement and therefore the prevailing party will be determined on retrial, we affirm the trial court's order denying Sirimanne and CSDS's motion for attorney fees. We affirm the judgment in favor of Costa on his cause of action for breach of contract.

---

[1] Citing California Rules of Court, rule 8.104, Costa argues that Sirimanne and CSDS's November 28, 2011 notice of appeal with respect to the trial court's order denying Sirimanne and CSDS's motion for attorney fees was untimely because it was filed more than 60 days after Sirimanne and CSDS "gave Notice of the Ruling" on September 15, 2011 of the trial court's order denying attorney fees. We disagree because a notice of ruling does not start the 60-day appeal period; rather, a notice of entry of the order or a file stamped copy of the order is necessary. (See Cal. Rules of Court, rule 8.104(a)(1)(A), (B); *Bi-Coastal Payroll Services, Inc. v. California Ins. Guarantee Assn.* (2009) 174 Cal.App.4th 579, 583–589; *Sunset Millennium Associates, LLC v. Le Songe, LLC* (2006) 138 Cal.App.4th 256, 259–260; *20th Century Ins. Co. v. Superior Court* (1994) 28 Cal.App.4th 666, 670–672.)

## BACKGROUND

### A. The complaint

On July 28, 2009, "EDUARDO COSTA, d/b/a SOL DOMINICANA AIRLINES," filed a complaint against Sirimanne and CSDS, alleging causes of action for fraud, breach of contract, quantum meruit, and "restraining order" (complaint). The complaint alleged as follows. On April 30, 2007, "Costa d/b/a SOL" entered into an agreement to lease two aircraft with an option to purchase from CSDS (Lease/Purchase Agreement). CSDS represented to Costa that it owned the two aircraft. "Costa, d/b/a SOL" intended to use the aircraft to transport passengers to and from the Caribbean. Two aircraft were required to conduct such an operation in the event one of the aircraft malfunctioned.

Costa made a down payment and monthly payments to CSDS for the two aircraft. The first aircraft was delivered to Costa in June 2007. In November 2007, Costa discovered that the second aircraft was not owned by CSDS but was owned by Air Wisconsin, Inc. The second aircraft was never delivered to Costa even though Sirimanne and CSDS assured Costa that CSDS would be able to deliver the second aircraft because CSDS "had a particular agreement with Air Wisconsin." Costa was unable to use the first aircraft to transport passengers to and from the Caribbean because he did not have two aircraft.

In order to help Costa recoup Costa's losses from the failed Caribbean venture, on January 24, 2008, Sirimanne and CSDS agreed with Costa that Costa could sublease the two aircraft to an airline called Regional Paraguaya. "Costa, d/b/a SOL, pursuant to the sublease," delivered and subleased the first aircraft to Regional Paraguaya. Sirimanne and CSDS failed to deliver the second aircraft to Costa. Subsequently, Sirimanne and CSDS made false representations to Costa regarding plans to lease or sell the two aircraft to other carriers. Costa would not have entered into the Lease/Purchase Agreement or agreed to help sublease or sell the first aircraft if Costa had known the falsity of Sirimanne and CSDS's representations.

In November 2008, Costa agreed with Sirimanne and CSDS that if Sirimanne and CSDS sold the first aircraft with Costa's assistance, Costa would receive $400,000; Costa

3

would receive a $50,000 bonus if the sales price exceeded $1.3 million. After Costa placed a lien on the first aircraft, Sirimanne and CSDS "threatened Costa with violence if he [did] not remove the lien." Sirimanne and CSDS never intended to pay Costa commissions on the subsequent lease or sale of the first aircraft.

On January 24, 2008, Costa agreed with Sirimanne and CSDS that if Costa met with the chief executive officer (CEO) of Lloyd Aereo Boliviano (Lloyd) and successfully "effectuate[d] the transfer of title and possession of" a Boeing aircraft from Lloyd to CSDS, "and thus complete[d] CSDS' 'sale' [of the Boeing aircraft] to Lorena Air, CSDS would compensate Costa $300,000 for his commission and costs" (Boeing Agreement). Costa met with the CEO of Lloyd and later discovered that CSDS had sold the Boeing aircraft to Lorena Air. Sirimanne and CSDS did not pay the commission to Costa owed under the Boeing Agreement.

## B. The cross-complaint

On January 7, 2010, Sirimanne and CSDS filed a joint answer denying the allegations of the complaint and asserting affirmative defenses. On that same day, CSDS filed a cross-complaint against "EDUARDO COSTA d/b/a/ SOL DOMINICANA AIRLINES" (cross-complaint). The cross-complaint alleged causes of action for breach of written contract against "SOL"; breach of oral contract against Costa; fraud against "SOL"; negligent misrepresentation against "SOL"; interference with prospective economic advantage against "SOL"; and "money paid" against "SOL."

The cross-complaint alleged as follows. Costa was a citizen of Brazil and Sol was a company organized and existing under the laws of the Dominican Republic, with its principal place of business in Santo Domingo, Dominican Republic. "Costa, on behalf of SOL," entered into negotiations regarding the lease and purchase of the two aircraft. On February 21, 2007, "CSDS and SOL executed [a letter of intent] for SOL to lease with an option to purchase two Aircraft from CSDS." On April 30, 2007, "CSDS and SOL executed a formal Lease Purchase Agreement regarding the Aircraft." At the time of delivery of the first aircraft on April 30, 2007, "SOL" had not fulfilled certain conditions required under the Lease/Purchase Agreement, including paying the balance of the

4

deposit. "SOL" defaulted on its lease payments in April 2008; flew the first aircraft to Brazil and then to Paraguay without obtaining a required airline operator certificate; and failed to perform regular maintenance on the first aircraft as required. In order to avoid having a lien placed on the first aircraft, CSDS paid a third party for parts and services for the first aircraft upon the failure of "SOL" to make payments to the third party. CSDS entered into an oral agreement with Costa to sell the first aircraft, but Costa failed to prepare the first aircraft for sale. Because "SOL" had not obtained proper documentation and a "maintenance performer," and had not established a maintenance program by May 1, 2007, "SOL" requested CSDS to maintain possession of the second aircraft until "SOL" was ready to take delivery. In reliance on "SOL's" representations that it was in the process of obtaining proper documentation, CSDS did not sell the second aircraft to a potential buyer. Sirimanne and CSDS prayed for damages incurred, "[a]s a result of SOL's" actions, for $2 million for breach of contract; $2.7 million for fraud; $2.7 million for negligent misrepresentation; $2.7 million for interference with prospective economic advantage; and $300,000 for "money paid."

## C. Sirimanne and CSDS's counsel's motion to be relieved as counsel

On March 1, 2011, Sirimanne and CSDS's counsel filed a motion to be relieved as counsel, declaring as follows. Sirimanne and CSDS had not responded to counsel's attempts to contact them by telephone and e-mail for the last several months. Consequently, counsel was "not in a position to respond to" eight sets of written discovery propounded by Costa that were due on March 24, 2011. Further, Sirimanne and CSDS failed to pay their attorney fees and costs.

Sirimanne and CSDS did not oppose the motion to withdraw and did not attend the April 1, 2011 hearing at which the motion was granted. Subsequently, Sirimanne and CSDS retained new counsel. The trial court continued the trial to June 20, 2011. Sirimanne and CSDS dismissed their cross-complaint on June 21, 2011. At some point before trial, jury was waived.

**D. The trial**

On June 21, 2011, Sirimanne and CSDS filed a trial brief, describing a "major" legal issue as: "COSTA's right to bring claims for breach of contract and fraud against CSDS regarding a contract in which (a) SOL was a corporation, and (b) SOL (and NOT COSTA) was a party to the contract."

Trial commenced on June 22, 2011. After Costa's opening statement, Sirimanne and CSDS made an oral motion for nonsuit, arguing, "There was no reference to the business dealings of Sol, which is as set forth in the complaint, dba Sol Dominicana Airlines." The trial court denied the motion stating, "Of course, he did say in his opening statement that he was going to do business at the Dominican Republic operating as Sol Dominicana."

At trial, Costa testified that Sirimanne asked him to arrange a meeting between Sirimanne and the CEO of Lloyd in order to facilitate the sale of a Boeing aircraft; in return, Costa and two other persons involved in the arrangement were to receive $100,000 each. Costa testified that Sirimanne told him, "*[H]e* [Sirimanne] would pay $300,000, [$]100,000 for each of us to help him in this meeting." (Italics added.) A letter of agreement dated January 24, 2008 (Letter of Agreement) was entered into evidence. The Letter of Agreement stated that Costa and another person would "receive a commission" to compensate them for scheduling "a first meeting with" the CEO of Lloyd in order to "complete the transaction for CSDS." The Letter of Agreement displayed a signature line with Sirimanne as president of CSDS. An e-mail dated March 26, 2008 (March e-mail), setting forth the terms of the Boeing Agreement was also introduced into evidence. The March e-mail displayed a signature line with Sirimanne as president of CSDS. The March e-mail stated, "*I* [Sirimanne] will pay a total of **US $300,000** for all three people, the following way. [¶] . . . [¶] *I* will pay **US $100,000** as soon as the aircraft departs Brazil. [¶] . . . [¶] Please understand *I* cannot do better than this since *I* have to spend over $4.5 Million on this aircraft and my return is coming over 48 months. *I* am financing this deal with no title to the aircraft which is very difficult." (Italics added.) Costa testified that "also on the agreement when the

6

plane would leave Brazil, *he* [Sirimanne] would pay the $300,000," and "[t]his document, it's where *he* [Sirimanne] agrees that *he's* going to pay $300,000 to me, to Paulo and to Sturno as soon as the plane would leave Brazil." (Italics added.) Costa performed his part of the Boeing Agreement, but Sirimanne did not pay him $100,000.

Sirimanne testified that his digital signature was on the Letter of Agreement, "but I did not put it there. I did not sign this agreement." Sirimanne testified that he had asked Costa to connect him with Lloyd and that the Letter of Agreement accurately reflected his agreement to pay a commission to Costa for introducing him to Lloyd. Sirimanne further testified that the March e-mail from him to Costa confirmed his agreement that he would pay $300,000 to Costa and two other people.

Sirimanne and CSDS's counsel argued that "[t]he contract for the commissions was an oral contract. This e-mail is proof of the terms of the oral contract." Sirimanne and CSDS's counsel argued that the March e-mail confirmed that Sirimanne was acting as president of CSDS when he entered into the Boeing Agreement with Costa. The trial court stated, "Yeah, that's what it says at the bottom. A lot of people use paperwork that has the name of the company on it. We don't have testimony from Mr. Sirimanne on that issue though, do we? [¶] The answer is no, we don't." Sirimanne and CSDS's counsel stated, "None that I am aware of at this time."

Later, the trial court asked Costa's counsel, "[T]he exception of the agreement to pay the [$]300,000 to three people, aren't all of the allegations directed against CSDS and not Mr. Sirimanne . . . [¶] . . . [¶] . . . in his personal capacity?" Costa's counsel responded, "The request for the commissions for $300,000, we're claiming that Mr. Sirimanne is part of that."

After Costa rested his case on June 23, 2011, CSDS and Sirimanne stated that they might move for a "non-suit" or a "directed verdict." The trial court then stated that it had a "question about the standing in this case," and ordered the parties to brief whether Costa could bring a lawsuit in his "personal capacity . . . on behalf of a . . . now defunct corporation." The next morning, on June 24, 2011, Costa made a motion to amend the complaint to add Sol as a plaintiff. The court denied the motion stating, "And had there

7

been, I assume, a demurrer filed, that would have focused the issue. I was, obviously, not the calendar judge. I don't know how the case was pretried. . . . [Sirimanne and CSDS] can simply choose to defend based on the complaint as filed and the evidence as introduced at trial." The court concluded that Sirimanne and CSDS were prejudiced by their lack of ability to conduct discovery as to Costa's "corporate authority, which . . . Costa has or does not have, as well as the defense that . . . Costa is not the proper party." The trial recommenced and concluded that day.

According to Sirimanne and CSDS's July 27, 2011 motion for attorney fees, on June 24, 2011, the trial court rendered a tentative decision that Costa recover nothing on his claim against Sirimanne and CSDS for breach of the Lease/Purchase Agreement. That tentative decision is not included in the record on appeal. Sirimanne and CSDS's motion requested attorney fees incurred in defending against Costa's breach of contract action based on the Lease/Purchase Agreement. The trial court denied the motion on August 19, 2011.

On August 29, 2011, the trial court rendered a statement of decision as follows. Costa had no standing to sue Sirimanne and CSDS for the first and second causes of action for fraud. No representations were made by Sirimanne and CSDS to Costa in Costa's personal capacity and no reason was shown to disregard the corporate entity and allow Costa to sue in his own name. Costa had no standing to sue Sirimanne and CSDS for the third cause of action for breach of contract. Costa, as president of Sol, signed a letter of intent for the lease and purchase of the two aircraft and the Lease/Purchase Agreement. No representations were made by Sirimanne and CSDS to Costa in Costa's personal capacity; fraudulent misrepresentations, if any, were made to Sol, which is not a party to the action. Costa did not suffer damages as a result of any representations made by Sirimanne and CSDS.

Costa, as an individual, agreed with Sirimanne and CSDS that Costa and two other individuals, who were not parties to the action, would receive $100,000 each if Costa performed introductions for the sale of the Boeing aircraft. Sirimanne, in his personal and corporate capacity, promised to pay Costa and the two other individuals $100,000

8

each. Costa, and not Sol, was a party to the Boeing Agreement; Costa performed what was required of him under the Boeing Agreement; and Costa established that Sirimanne and CSDS breached the Boeing Agreement by failing to pay $100,000 to Costa. Costa entered into the Boeing Agreement in his personal capacity, and although it was unclear whether Sirimanne entered into the Boeing Agreement in his personal capacity or as a representative of CSDS, "[t]hat lack of clarity does not rebound against . . . Costa." The trial court declined to exercise equity jurisdiction on the quantum meruit cause of action. Costa's motion to amend the complaint at trial was denied because Sirimanne and CSDS "had no opportunity to conduct discovery concerning a new party, i.e., the corporate entity Sol . . . and thereby would be prejudiced by the late amendment of the complaint to add a new party. [Sirimanne and CSDS] were entitled to defend the action based upon the state of the pleadings during the trial in mounting their defense and choosing to waive jury."

Judgment was entered on August 29, 2011, in favor of Costa for $100,000 and against Sirimanne and CSDS, jointly and severally. Notice of entry of judgment was served on September 12, 2011. Costa filed a notice of appeal on November 4, 2011. Sirimanne and CSDS filed a notice of appeal on November 28, 2011.

## DISCUSSION

### A. The trial court erred in denying Costa's motion to amend the complaint to add Sol as a plaintiff

Costa contends that the trial court abused its discretion in denying Costa's motion to amend the complaint to add Sol as a plaintiff. We agree because Sirimanne and CSDS fail to articulate any facts or legal theories that would have been changed by the proposed amendment and Sirimanne and CSDS would not have been prejudiced.

Code of Civil Procedure section 473, subdivision (a)(1) provides, in pertinent part, "The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any

9

party . . . ."**2** A pleading may be amended before or after commencement of trial in the furtherance of justice and upon such terms as may be proper. (§ 576.) "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (§ 469.) "Such amendments at trial to conform to proof, 'if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation.' [Citation.]" (*Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 909.) Granting or denying leave to amend a complaint is within the discretion of the trial court; the exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse. (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)

"'Generally, a different plaintiff [is] substituted in because there [is] a technical defect in the plaintiff's status (an administrator for a deceased plaintiff; a stockholder in place of a corporation; etc.); a necessary party [is] joined; or a nominal plaintiff [is] removed and the real party in interest [takes] his place.' [Citations.]" (*Pasadena Hospital Assn., Ltd. v. Superior Court* (1988) 204 Cal.App.3d 1031, 1035.) Thus, "[C]ourts have permitted plaintiffs who have been determined to lack standing, or who have lost standing after the complaint was filed, to substitute as plaintiffs the true real parties in interest. (*Klopstock v. Superior Court* [(1941)] 17 Cal.2d 13, 19–21 [administrator of deceased shareholder's estate substituted as plaintiff in corporate derivative action]; see also *Haley v. Dow Lewis Motors, Inc.* [(1999)] 72 Cal.App.4th 497, 506–509 [trustee in bankruptcy substituted for bankrupt debtors]; *California Air Resources Bd. v. Hart* (1993) 21 Cal.App.4th 289, 300–301 [Attorney General substituted for state administrative agency]; *Jensen v. Royal Pools* (1975) 48 Cal.App.3d 717, 720–723 [condominium owners substituted for owners' association]; *Powers v. Ashton* (1975) 45 Cal.App.3d 783, 790 [trustees substituted for nontrustee administrator].) Amendments for this purpose are liberally allowed. (*Klopstock v. Superior Court, supra*, at pp. 19–21; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 1126, p. 581; *id.*, § 1155, p. 614.)"

---

**2** Undesignated statutory references are to the Code of Civil Procedure.

10

(*Branick v. Downey Savings & Loan Assn.*, *supra*, 39 Cal.4th at p. 243.) "The important limitation on the rule just mentioned is that the plaintiff proposed to be substituted may not 'state facts which give rise to a wholly distinct and different legal obligation against the defendant.' (*Klopstock v. Superior Court*, *supra*, 17 Cal.2d at 13, 20.) For this purpose, '[i]n determining whether a wholly different cause of action is introduced by the amendment technical considerations or ancient formulae are not controlling; nothing more is meant than that the defendant not be required to answer a wholly different legal liability or obligation from that originally stated.' (*Ibid*.)" (*Branick v. Downey Savings & Loan Assn.*, *supra*, 39 Cal.4th at pp. 243–244.) Accordingly, "'The cases on amending pleadings during trial suggest trial courts should be guided by two general principles: (1) whether facts or legal theories are being changed and (2) whether the opposing party will be prejudiced by the proposed amendment. . . .' [Citation.]" (*Garcia v. Roberts*, *supra*, 173 Cal.App.4th at p. 910.)

*Pasadena Hospital Assn., Ltd. v. Superior Court*, *supra*, 204 Cal.App.3d 1031, is illustrative. There, the appellate court concluded that the trial court did not abuse its discretion in granting the plaintiff doctor leave to amend his complaint to name his professional corporation as a new party plaintiff because adding the plaintiff doctor's professional corporation remedied a technical defect; the claims of the plaintiff doctor and the corporation arose from the same conduct on the defendant's part; the harm to the plaintiff doctor and the corporation "do not appear to be distinct"; the substantive basis of the cause of action was not changed; the defendant hospital "should have been aware of the existence of the corporation at the time" the plaintiff doctor filed his original complaint; no new facts were alleged as a basis for recovery; and no possible prejudice to the defendant would result. (*Id*. at pp. 1036–1037.)

Under the foregoing authorities, we determine that the trial court erred in denying Costa's motion to amend to add Sol as a plaintiff because Sirimanne and CSDS fail to articulate any facts or legal theories that would have been changed by the proposed amendment; Costa's lack of standing in the fraud and breach of written contract actions was a technical defect that would have been cured by adding Sol as the real party in

11

interest; and the allegations of the complaint and the proposed amended complaint arose from the same alleged conduct on Sirimanne and CSDS's part, namely, their breach of the terms of the Lease/Purchase Agreement; fraudulent misrepresentations inducing Costa, on behalf of Sol, to enter into the Lease/Purchase Agreement; and fraudulent misrepresentations regarding subsequent plans to sell or lease one or both of the aircraft.

Further, CSDS's cross-complaint illustrates that CSDS was not "'required to answer a wholly different legal liability or obligation from that originally stated.'" (*Branick v. Downey Savings & Loan Assn.*, *supra*, 39 Cal.4th at pp. 243–244.)  The cross-complaint was filed against Costa doing business as Sol, but named Sol as a party and described it as a company organized under the laws of the Dominican Republic.  It also alleged that "Costa, on behalf of SOL," entered into negotiations regarding the lease of the two aircraft; "SOL and CSDS" executed the Lease/Purchase Agreement; at the time of delivery of the first aircraft, "SOL" had not fulfilled certain conditions required under the Lease/Purchase Agreement, including paying the balance of the deposit; "SOL" defaulted on its lease payments; "SOL" flew the first aircraft to Brazil and then to Paraguay without obtaining proper documentation; and "SOL" failed to perform regular maintenance on the first aircraft as required.  The cross-complaint also alleged that in order to avoid having a lien placed on the first aircraft, CSDS had to pay a third party for parts and services for the first aircraft upon the failure of "SOL" to do so and that because "SOL" had not fulfilled certain conditions, "SOL" requested CSDS to maintain possession of the second aircraft until "SOL" was ready to take delivery.  Further, it alleged that in reliance on "SOL's" representations that it was in the process of obtaining proper documentation, CSDS did not sell the second aircraft to a potential buyer.  And the cross-complaint prayed for damages against Sol that arose "[a]s a result of SOL's" actions.  Thus, no significant facts or legal theories would have been changed by the amendment; and the answer and cross-complaint would not have been materially different had Sol been named as a plaintiff in the complaint.

Nevertheless, Sirimanne and CSDS claim that the trial court did not err in denying Costa's motion to amend the complaint, arguing that Sirimanne and CSDS would have

12

incurred substantial prejudice. Sirimanne and CSDS argue that because Costa "waited until the entire case had been presented and all examinations had been exhausted to request leave" to amend, Sirimanne and CSDS were limited in their options for defense and subjected to substantial prejudice. We disagree.

*Cal. Gas. Retailers v. Regal Petroleum Corp*. (1958) 50 Cal.2d 844 is instructive. That case held, "[A] court may, in its discretion, permit amendment of pleadings after the evidence is all in, pending argument of counsel, and even after submission of the cause." (*Id. at p.* 851.) There, the plaintiff, a nonprofit corporation, made a motion to amend the complaint to add the president of the corporation as a party plaintiff after the evidence had been concluded and both parties had rested. (*Id*. at p. 848.) The trial court granted the motion the day it rendered its decision, which our Supreme Court affirmed on appeal, explaining, "The amendment to the complaint stated no new cause of action against the defendants, nor did it state any new facts. It does not appear that defendants were prejudiced thereby and the court did not abuse its discretion in permitting the amendment and inclusion of [the president] as plaintiff so that the pleadings would conform to the proof." (*Id*. at p. 851.)

As noted, the proposed amendment did not state a new cause of action against Sirimanne and CSDS or state any new facts. Nor have Sirimanne and CSDS established any prejudice to them by Costa's failure to amend the complaint earlier. Sirimanne and CSDS argue they were unable to conduct discovery on Sol and that their counsel's failure to conduct discovery "may well have been a prudent attempt to avoid wasting time and resources." This is mere speculation. In any case, Sirimanne and CSDS had stopped communicating with their counsel, who withdrew as their attorney, declaring she was "not in a position to respond to" written discovery propounded by Costa because Sirimanne and CSDS did not return her phone calls or e-mails. As stated, the cross-complaint alleged that Sol was a corporate entity, party, and cross-defendant and that the Lease/Purchase Agreement was signed by Costa, as the president of Sol, and Sirimanne, as the president of CSDS. Accordingly, we reject Sirimanne and CSDS's argument that they did not conduct discovery because Costa was "'the only plaintiff.'"

13

Nor are we convinced by Sirimanne and CSDS's argument that "if Sirimanne and CSDS had been defending a case against SOL, they might not have waived their right to a jury trial." Sirimanne and CSDS do not support this contention by anything other than speculation and thus have not shown prejudice in this regard.

We conclude that because the proposed amendment would not have changed the facts or legal theories and Sirimanne and CSDS would not have been prejudiced, the trial court erred in denying Costa's motion to amend the complaint.[3]

**B. Substantial evidence supports the judgment in favor of Costa and against Sirimanne as individuals in Costa's breach of contract action regarding the Boeing Agreement**

Sirimanne and CSDS contend that insufficient evidence supports the judgment in favor of Costa and against Sirimanne as individuals in Costa's breach of contract action regarding the Boeing Agreement. We disagree.

"Ordinarily, . . . a reviewing court is required to infer any factual findings necessary to support the judgment. [Citations.] This rule 'is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error.' [Citation.]" (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494.) "In reviewing a challenge to the sufficiency of the evidence, we are bound by the substantial evidence rule. All factual matters must be viewed in favor of the prevailing party and in support of the judgment. All conflicts in the evidence must be resolved in favor of the

_____

[3] On appeal, Costa does not articulate a cogent argument or cite authority as to why the trial court erred in finding in favor of Sirimanne and CSDS on the remaining causes of action for quantum meruit and "restraining order." Accordingly, Costa has forfeited those issues on appeal. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546 [if appellant's brief does not contain a legal argument with a citation of authorities on the point made, the court need not furnish argument or search the record for support for appellant's contention but may treat it as forfeited and pass it without consideration].)

14

judgment." (*Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 58.)

Sirimanne and CSDS contend that neither the Letter of Agreement, the March e-mail, "nor the trial testimony regarding these documents provide sufficient evidence to support entering a judgment against Sirimanne" as an individual with respect to the Boeing Agreement. Sirimanne and CSDS contend that the Letter of Agreement showed a signature line for Costa, as president of Sol, and because Costa brought the action in his individual capacity, he lacked standing to recover against CSDS. Further, Sirimanne and CSDS urge that because Sirimanne signed the March e-mail as the president of CSDS, he acted merely as an agent and there was no evidence to support a judgment against him individually.

We conclude that substantial evidence supports the trial court's conclusion that Costa and Sirimanne entered into the Boeing Agreement in their individual capacities. Costa's testimony that Sirimanne asked him to arrange a meeting between Sirimanne and the CEO of Lloyd in order to facilitate the sale of a Boeing aircraft supports the conclusion that he entered into the Boeing Agreement as an individual. Costa testified that Sirimanne had told him, "*[H]e* [Sirimanne] would pay $300,000, [$]100,000 for each of us to help him in this meeting." With reference to the March e-mail, Costa testified "also on the agreement when the plane would leave Brazil, *he* [Sirimanne] would pay the $300,000," and "[t]his document, it's where *he* [Sirimanne] agrees that *he's* going to pay $300,000 to me, to Paulo and to Sturno as soon as the plane would leave Brazil." (Italics added.) Sirimanne did not challenge Costa's testimony in this regard. Sirimanne and CSDS's counsel agreed with the court that Sirimanne did not testify he entered into the Boeing Agreement as an agent of CSDS. And Sirimanne testified that he did not sign the Letter of Agreement which indicated he signed on behalf of CSDS. Thus, the court reasonably concluded Sirimanne entered into the agreement in his personal capacity, noting that Sirimanne never testified that he entered into the Boeing Agreement as the

15

agent of CSDS and commenting that "[a] lot of people use paperwork that has the name of the company on it."[4]

We conclude that substantial evidence supported the judgment in favor of Costa and against Sirimanne as individuals with respect to the Boeing Agreement.

## C. We affirm the trial court's order denying Sirimanne and CSDS's motion for attorney fees

Sirimanne and CSDS appeal from the trial court's order denying their motion for attorney fees, claiming they are prevailing parties under Civil Code section 1717 with respect to the causes of action regarding the Lease/Purchase Agreement. We disagree because we are reversing the trial court's order denying Costa's motion to amend the complaint with respect to the causes of action regarding the Lease/Purchase Agreement and therefore the prevailing party will be determined on retrial.

---

[4] At trial, in response to an inquiry by the trial court as to whether Sirimanne was being sued as an individual on the breach of the Boeing Agreement, Costa's counsel replied in the affirmative and Sirimanne's counsel did not comment. Therefore, Sirimanne was on notice of this variance in proof. (§ 469 ["No variance between the allegation in a pleading and the proof is deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits."].)

16

## DISPOSITION

The trial court's order denying Eduardo Costa's motion to amend the complaint to add Sol Dominicana Airlines as a plaintiff is reversed, and the trial court is directed to issue an order allowing the amendment. The trial court's order denying Sirimanne and CSDS Aircraft Sales & Leasing, Inc.'s motion for attorney fees is affirmed. In all other respects, the judgment is affirmed. Eduardo Costa is entitled to costs on appeal.

NOT TO BE PUBLISHED.


MALLANO, P. J.

We concur:


ROTHSCHILD, J.


JOHNSON, J.

17