Filed 1/31/14   Costa Del Sol at Carmel Valley HOA v. Mitchell CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| COSTA DEL SOL AT CARMEL VALLEY HOMEOWNERS ASSOCIATION,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SCOTT MITCHELL et al.,<br><br>        Defendants and Appellants. | D061807<br><br><br>(Super. Ct. No. 37-2010-00087197-CU-CO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Steven R. Denton, Judge.  Affirmed.

Alexandra T. Manbeck for Defendants and Appellants.

Scudi & Ayers, Morgan J.C. Scudi and J. Ray Ayers, for Plaintiff and Respondent.


The Costa Del Sol at Carmel Valley Homeowners Association (Association) brought an action against homeowners Scott and Mary Mitchell, alleging their dogs created a dangerous situation in and near the residential development.  The Association asserted claims for breach of equitable servitude, public and private nuisance, and

violation of a statute providing remedies when a dog has bitten a human being (Civ. Code, § 3342.5). The Mitchells filed a cross-complaint, but the court dismissed this pleading after granting the Association's anti-SLAPP motion. (Code Civ. Proc., § 425.16.) The Mitchells did not appeal from the anti-SLAPP order.

At the nonjury trial, the parties presented 20 witnesses and numerous exhibits. After considering the evidence and arguments, the court ruled in the Association's favor on each of its claims and issued a lengthy and detailed statement explaining its findings. The court found the evidence showed "the dogs have menaced, charged, lunged at, attacked, or bitten persons and other dogs within and about the Development" and the Association proved the "dogs as supervised by the Mitchells represent a clear and present danger to the residents and animals of the community without Court intervention." The court also found the Association repeatedly attempted to work with the Mitchells to prevent problems, but the Mitchells failed to cooperate with these efforts. The court issued a permanent injunction prohibiting the Mitchells from allowing their dogs to leave their Costa Del Sol property except to transport the dogs to and from their home. The court also ordered the Mitchells to pay $1,550 in outstanding assessments.

The Mitchells raise numerous appellate contentions. We determine the contentions are without merit, and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]

The Association is the governing body for a residential development known as Costa Del Sol in Carmel Valley (Costa Del Sol). The development is governed by a Declaration of Covenants, Conditions and Restrictions (CC&R's).

In about 2002, the Mitchells purchased a home in the Costa Del Sol development and began living in the home. At the relevant times, the Mitchells owned three large German Shepherd dogs (Kirby, Ginger, and Daisy). Mrs. Mitchell frequently walked the three dogs together in the common areas, but had trouble controlling the dogs. Mrs. Mitchell would also allow the dogs to run unleashed in an undeveloped area immediately outside the development's side gates. The Association had maintenance responsibilities over this area.

From 2006 until 2010, the Mitchell dogs had numerous encounters with neighbors and other individuals. The following summarizes some of these incidents.

In 2006, Shelly Yeager was walking in the undeveloped area with her husband, their two young children, and their leashed dog. Two of the Mitchell dogs charged at the

___

[1] The Mitchells violate numerous appellate rules in their briefs. These violations include (but are not limited to) discussing only favorable evidence, providing factual and legal citations that do not support their arguments, making misleading assertions, asserting arguments without citing to the relevant portions of the record, and improperly identifying and applying applicable review standards. Although we have the authority to strike appellants' briefs based on these violations (see Cal. Rules of Court, rule 8.204(e)(2)(B)), we exercise our discretion to reach the appellate contentions on their merits. However, we disregard assertions unsupported by factual or legal authority. (See *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.) The Mitchells' counsel is cautioned to familiarize herself with the applicable rules before filing another appellate brief.

Yeagers, barking and growling. The Mitchell dogs attacked and bit the Yeagers' dog, and then lunged and jumped onto Mrs. Yeager, who was holding her young child. The family was terrified. Mrs. Mitchell did not attempt to physically restrain her dogs. At trial, Mrs. Mitchell denied this event had occurred. The court found Mrs. Mitchell's testimony regarding this incident was "not credible."

In April 2007, Dale Peterson was working for a Costa Del Sol homeowner's moving company. When he was in the field area, the Mitchells' three dogs attacked him and bit him, tearing his pants. Based on this incident, the San Diego County Animal Services Department (County Animal Services) issued a quarantine order for the dogs, but Mrs. Mitchell refused to cooperate with the order. In a sworn statement prepared shortly after the incident, Mrs. Mitchell admitted that one of her dogs "caught [the man's] pant leg and tore it in a 'Z' shape." At trial Mrs. Mitchell refused to acknowledge her dogs had bitten Peterson and suggested that Peterson was responsible for the attack. The court specifically found "the trial testimony of Mary Mitchell with respect to this incident is not credible" and that she "engaged in denial and deception with respect to the conduct of her dogs."

Several months later, a neighbor who lived across the street from the Mitchells (Kurt Yardley) was walking in the development with his four-year-old daughter and a seven-year-old neighbor. Suddenly, he heard clawing, growling, and snarling. When he turned he saw all three of the Mitchells' German Shepherds in "full attack mode." The dogs circled them at a distance of three to five feet away, growling and barking. Having previously witnessed numerous aggressive acts by the dogs, Yardley was terrified and

4

began screaming hysterically and waving at the dogs. Mr. Mitchell came out from the direction of his home and on command the dogs retreated back to the Mitchells' yard. Yardley reported the incident to County Animal Services and executed a citizen's arrest form. The trial court made a specific finding that during this incident Yardley was "in serious fear of his safety and that of the children."

About three months later, in October 2007, Mrs. Mitchell was walking in the development's common area with two dogs on leashes and a puppy in her arms. While going past a three-year-old child on the sidewalk, the leashed dogs lunged at the child's face, while snarling and growling. When confronted about the incident, Mrs. Mitchell initially denied the event had occurred, and then later claimed her dog felt threatened by the child and was simply being protective.

The next month, the Mitchells' next door neighbor, Monique Torres, wrote to the Association's Board of Directors (Board) and demanded that action be taken to protect the neighbors from the likelihood of injury resulting from the Mitchell dogs. In the letter and in her trial testimony, Torres said the Mitchell dogs would frequently growl, lunge, and bare their teeth at her. She said that Mrs. Mitchell cannot control the animals when she walks them together. She also observed that the Mitchells sometimes allowed their dogs to run free in the common areas and saw a near attack on a young child. In her letter, Torres said that it is "not a matter of 'if' a small child will be attacked by these dogs, but 'when.' "

The next year, in August 2008, the Mitchell dogs attacked and bit a landscape worker, Kloe Palacios, while he was working in the undeveloped area outside the

5

residential gate. Although Palacios did not testify, his supervisor testified that he saw Palacios shortly after the attack and that Palacios had ripped pants and a "puncture wound." Shortly after he was bitten, Palacios was taken to a medical clinic and his supervisor informed the Association and County Animal Services. When the Association's Board president (Daniel Balsiger) questioned Mrs. Mitchell about the incident, she acknowledged the incident occurred, but blamed Palacios for the incident because the dogs may have felt threatened by him or were trying to protect her because the worker was Hispanic, was not wearing a uniform, and purportedly had a tool in his hand. At trial, Mrs. Mitchell acknowledged that one of her dogs (Ginger) had blood on its mouth after the dog's encounter with Palacios.

Shortly after this incident, on September 15, 2008, the Association's counsel wrote a letter to the Mitchells identifying the incidents when the Mitchell dogs had attacked or threatened individuals, and stating these incidents violate various CC&R's provisions, including rules requiring animal owners to keep animals under control at all times and prohibiting actions that "interfere[ ] with the quiet enjoyment" of the other residents. The letter notified the Mitchells of an October 7 Board meeting at which they would have the opportunity to explain why they should not be penalized for the violations.

The Mitchells attended the October 7 Board meeting. At the conclusion of the meeting, the Board determined the Mitchells had violated the CC&R's, but accepted Mr. Mitchell's offer of dog control corrections, including that the dogs would be restrained at all times with appropriate nonretractable leashes and would remain inside the home when neighborhood children were outside playing. The Board also voted to require the

6

Mitchells to install mechanical self-enclosures on their gates to prevent further incidents, and to assess the Mitchells $1,400 to reimburse the Association for attorney fees resulting from the Mitchells' actions.

The Mitchells thereafter failed to comply with these measures and failed to correct the problems. They continued to walk their dogs without proper leashes, and to walk multiple dogs without being in control of the dogs. The Mitchells also refused to pay the assessment fine.

During the next nine months, neighbors continued to feel threatened and terrorized by the dogs. Then, in July 2009, an incident occurred that triggered additional Board action. On July 29, 2009, Judy Balsiger (the wife of the then Board president) was in her home. Her eight-year-old daughter was in the front yard area with their new six-week-old puppy on a leash. Mrs. Balsiger heard terrified screaming coming from her daughter's location. She observed the Mitchells' three dogs attacking the puppy. Mrs. Mitchell, who had fallen and lost control of a leash, was attempting to get up and restrain the dogs. Mr. Mitchell ran over to help control the dogs. One of the Mitchells' German Shepherds had the puppy in its mouth and was swinging it back and forth like "a rag doll." When the puppy was able to get loose, it ran under a bush next to the Balsiger home. As Mrs. Balsiger was attempting to rescue the puppy, she was scratched and/or bitten by one of the Mitchell dogs that was still trying to get at the puppy. Mrs. Balsiger suffered scratches and/or bite marks on her leg and arm. The Balsiger child was traumatized by the event. Mr. and Mrs. Mitchell agreed to and did pay for the veterinarian bills for the puppy.

7

When asked about this attack, Mrs. Mitchell claimed her dogs would never attack another dog and that they must have mistaken the puppy for a rabbit. Although Mr. and Mrs. Mitchell both denied at trial that their dog had the puppy in its mouth or that their dogs scratched, bit, or attempted to bite Mrs. Balsiger, the court found their testimony not to be credible.

Shortly after the Balsiger puppy incident, on September 16, 2009, the Board met again to discuss the Mitchell dogs and the Mitchells' noncompliance with the CC&R's. After the meeting, the Board found the Mitchell dogs continued to present a serious danger to other persons and animals within the residential development. They offered the Mitchells an opportunity to retain the animals in the development by agreeing in writing to certain steps to ensure the safety of the other residents and their pets. On October 1, 2009, the Association sent a letter to the Mitchells, listing five steps to which the Mitchells were required to agree or they would be required to remove the animals from the development. Mr. Mitchell signed the letter, agreeing to all but one of the requested steps. Mrs. Mitchell did not agree to any portion of the Board's offer, did not alter her dog walking or dog control practices, and did not agree to remove the dogs from the development.

Five months later, in March 2010, the Association filed the present lawsuit seeking removal of the Mitchell dogs (or other appropriate injunctive relief) and damages for nonpayment of fines/enforcement assessments. As is relevant here, the Association alleged breach of an equitable servitude (the CC&R's), private and public nuisance, and removal of the dogs under Civil Code section 3342.5.

8

In August 2010, the court (Judge Jay Bloom) granted the Association's preliminary injunction motion, finding the Association showed "a likelihood of prevailing in this action" and that immediate relief was necessary because of the documented actions of the dogs and the Mitchells' refusal to cooperate with the Board and County Animal Services. The Mitchells then filed an amended cross-complaint, but the Association successfully moved to strike each of the causes of action under the anti-SLAPP statute. (Code Civ. Proc., § 425.16.) The Mitchells did not appeal from the anti-SLAPP order.

Before trial on the permanent injunction, the Mitchells moved to exclude all evidence pertaining to a recent criminal action filed by the city attorney against Mrs. Mitchell relating to her failure to properly control her dogs. The Mitchells argued the criminal charges and a subsequent plea agreement were not relevant to the civil action. The court agreed and granted the motion.

The court then conducted a trial over numerous days. After the trial, the court took the matter under submission and ruled in favor of the Association. In a detailed statement of decision, the court set forth its factual findings (as summarized above), and concluded that the Association presented evidence of "documented and confirmed incidents where the [Mitchells' three German Shepherds] have menaced, charged, lunged at, attacked, or bitten persons and other dogs within and about the Development." The court found the Mitchells engaged in a "consistent course of behavior" showing they were "in denial concerning the dogs' behavior, and [would] defend and minimize the dogs' conduct."

9

In reaching its factual findings, the court noted the Mitchells presented witnesses (most of whom were not neighbors) who testified that "the dogs were well behaved, did not exhibit threatening behavior, and did not attack or bite any human or animal," and were safe with their children. But the court said this testimony did not "convince the Court that the dangerous behavior" observed by the Association's "witnesses did not occur, was fabricated or was exaggerated." The court said: "[T]he danger posed by the Mitchells' German Shepherd dogs are a combination of the dogs' behavior and the absence of responsible control exhibited primarily by Mary Mitchell. The Court finds that Mary Mitchell intentionally failed to cooperate with, and frustrated Animal Services' execution of Quarantine Orders following the dog attacks. . . . [¶] . . . [¶] The evidence . . . demonstrates that the [Mitchells'] German Shepherd dogs are aggressive and that their neighbors are legitimately concerned. The dogs as supervised by the Mitchells represent a clear and present danger to the residents and animals of the community without Court intervention. There is evidence of at least three actual dog bites in 2007-2009, as well as evidence that the dogs were running loose, lunging at children, attacking a puppy, and not being under the control of Defendants."

Based on these and other factual findings, the court found the Association had proved each of its claims. After considering the equities and weighing the relative hardship on the Mitchells against the benefits to the Association and residents, the court concluded injunctive relief was appropriate and necessary under the circumstances. In the final judgment, the court ordered the preliminary injunction be "confirmed as the permanent order of the Court." Specifically, the court stated the Mitchells are "subject to

10

permanent restrictive injunctive orders preventing the dogs from being in the common areas of [the] Costa del Sol . . . development. Further, Defendants' dogs shall not be off of Defendants' property within the development, except for the purpose of transporting their dogs off development property by car. If Defendants' violate this permanent injunction, the Court will consider modifying the injunction, by requiring Defendants to remove the dogs from the development permanently." The court also awarded the Association $1,550 for unpaid assessments.

## DISCUSSION

### I. *Mootness Claim*

The Mitchells contend the court had no jurisdiction over the matter because the problems caused by their dogs became moot after Mrs. Mitchell agreed as part of the plea agreement in the criminal case that she would relocate with her dogs outside the City of San Diego.

The argument fails for several reasons. First, there was no evidence of the plea agreement in the trial court proceedings below. Pursuant to the Mitchells' motion in limine and repeated evidentiary objections, the Association was not permitted to introduce any evidence of the criminal proceedings in the trial court, including the plea agreement. Because there is no evidence supporting that Mrs. Mitchell agreed to relocate, the Mitchells' appellate argument is unavailing.

In support of their mootness argument, the Mitchells ask that we consider evidence of the criminal proceedings for the first time on appeal and have filed a request for judicial notice attaching this evidence. We deny this request. It is a fundamental

11

principle of appellate law that our review of the trial court's decision must be based on the evidence before the court when it entered the judgment. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *Kumar v. National Medical Enterprises, Inc.* (1990) 218 Cal.App.3d 1050, 1057, fn. 1.) Thus, absent extraordinary circumstances, a reviewing court will not take judicial notice of matters not before the trial court. (*Vons Companies, supra*, 14 Cal.4th at p. 444, fn. 3; *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325; *Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, 1482, fn. 6.)

There are no extraordinary circumstances supporting an exception in this case. The evidence of the criminal proceedings and plea bargain was available at the time of trial, but the Mitchells (who were represented by counsel) made a tactical decision to preclude the trial court from considering any of this evidence. The Mitchells have provided no reasonable explanation for why they could not have produced these documents at trial. On this record, it would be inappropriate for this court to consider the evidence for the first time on appeal.

Moreover, even assuming we could consider evidence that Mrs. Mitchell had previously agreed to relocate, the arguments and evidence at trial support that the problems posed by the Mitchell dogs are not moot. First, at trial the Mitchells' counsel repeatedly made clear that they were *not* raising the relocation issue as a defense to the Association's claims. Based on these representations, the court precluded the Association from presenting evidence showing that the Mitchells continued to stay at their home with their dogs on various occasions. It would be unfair to permit the Mitchells to argue on

12

appeal that they no longer reside at the residence, when they expressly elected *not* to raise this issue at trial and successfully precluded the Association from presenting evidence on this issue.

Additionally, despite the Mitchells' objections, certain witnesses were permitted to testify that the Mitchells continue to own and live at the home. For example, neighbor Kurt Yardley testified that shortly before trial he saw the Mitchells at their house; that the Mitchells had not sold or rented their home; and within the previous six months he had seen the dogs at the house (and had video evidence to support this). In her testimony, Mrs. Mitchell also confirmed that she continues to own the property (although through a limited liability company owned by her husband and herself), and indicated that she could return to the property with the dogs if the court did not grant injunctive relief. At the hearing, the court observed: "The record appears to reflect that the Mitchells continue ownership of that property and occasionally come and go. They may reside . . . in other locations, but they occasionally come and go. And as owners of the property, . . . they have otherwise full rights under the CC&R's to do that which any other owner would do, so—it could include the full use of the common areas or to occupy the house, all of those things are a potential."

Finally, even assuming the Mitchells moved their dogs from the development, "a case does not become moot simply because the defendant discontinues the challenged practice, especially where 'there is no assurance that the [defendant] will not reenact it in the future.' " (*Kidd v. State of California* (1998) 62 Cal.App.4th 386, 398.) Based on the Mitchells' past conduct (and particularly the actions of Mrs. Mitchell) and the fact the

13

Mitchells still own the home, the evidence supports that without an injunction the Mitchells could and would likely return to their home with their dogs and again place the residents and their pets and children at risk of physical harm.

## II. *Sufficiency of Evidence Challenge*

The Mitchells contend the judgment must be reversed because there was insufficient evidence to support the court's findings. This contention fails for numerous reasons.

First, the Mitchells waived their argument by failing to present a fair summary of the evidence, including the evidence that was favorable to the Association. A party who challenges the factual basis of a court's conclusion must set forth, discuss, and analyze all the evidence on that point, both favorable *and unfavorable*. (See *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.) "Failure to set forth [all of] the material evidence on an issue waives a claim of insufficiency of the evidence." (*Brockey v. Moore* (2003) 107 Cal.App.4th 86, 96; see *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

The Mitchells' briefs set forth only those facts supporting their case, despite that most of these facts were expressly rejected by the trial court. The court repeatedly stated that it did not find Mary Mitchell's testimony to be credible, and instead credited the version of the events described by the Association witnesses, including Yardley, Mr. and Mrs. Balsiger, Torres, and Yeager. In their appellate briefs, the Mitchells ignore the evidence supporting the Association's case. By doing so, the Mitchells have waived their sufficiency of the evidence contentions.

14

The Mitchells' challenges to the court's factual findings also fail on their merits. When reviewing a sufficiency of the evidence challenge, "the power of the appellate court begins and ends with a determination whether there is any substantial evidence, contradicted or uncontradicted, which supports the finding." (*Kimble v. Board of Education* (1987) 192 Cal.App.3d 1423, 1427.) Evidence is "substantial" if it is of ponderable legal significance, reasonable in nature, credible, and of solid value. (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935-936.) The appellate court must draw all reasonable inferences in support of the court's findings, view the record in the light most favorable to the judgment, and affirm the judgment even if there is other evidence supporting a contrary finding. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) A "trial court's credibility findings cannot be reversed on appeal unless that testimony is . . . 'physically impossible or obviously false without resorting to inference or deduction.' " (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 200-201 (*Consolidated Irrigation*).)

Under this review standard, there was substantial evidence to support the court's findings and imposition of injunctive relief.

The court found the Mitchells violated the CC&R's by failing to control their dogs in the common areas. The evidence supports this finding. CC&R's section 7.4 requires animal owners to keep animals within an enclosure or under control and on a leash at all times, and CC&R's section 7.12 prohibits actions that "interfere[ ] with the quiet enjoyment" of the other residents. The evidence showed that despite numerous warnings, the Mitchells failed to keep their animals under control and on a leash at all times.

15

Additionally, the evidence supports that the animals were terrorizing the neighbors and substantially interfered with the neighbors' use and enjoyment of their property. The evidence showed the Mitchell dogs have repeatedly been involved in threatening behavior since 2006, the neighbors feel substantially threatened by the dogs, the neighbors' fear is credible and reasonable, and the Mitchells were unwilling or unable to prevent these problems.

The Mitchells argue the evidence did not support the court's findings because only a limited number of neighbors testified. The argument has no merit. The court had a reasonable basis to find credible the testimony of these neighbors, and there was no need to call additional witnesses. The testimony of a single witness may constitute substantial evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614; *Consolidated Irrigation, supra*, 204 Cal.App.4th at p. 201.) Further, the Mitchells themselves admitted their dogs were involved in various confrontations with the neighbors and workers.

As a central theme of their appellate briefs, the Mitchells contend the court's findings were unsupported because the Board's actions were motivated by fraud and malice and the Association acted in bad faith in bringing the action. They argue, for example, that the Board president (Dan Balsiger) "held personal grudges against them and headed a 'lynch mob.' " They also say the Association initiated this action merely to "*harm [Mrs.] Mitchell's criminal defense to send her to jail and* to extort attorneys' fees [from the Mitchells]."

These arguments reflect a misunderstanding of the review standard. The court specifically found the Association's motivations for bringing the action were to ensure a

16

safe neighborhood and prevent liability for third party dog bite injuries. As there is substantial evidence to support these findings, they are binding on appeal.

Moreover, the Mitchells do not cite to any *evidence* supporting their bad faith claims. Instead, they rely on exhibits attached to their judicial notice request. These documents are not properly before us, and we deny this request. The documents consist of matters relating to the criminal action against Mrs. Mitchell, including certain communications between the prosecuting agency and the Association residents. This evidence was available to the Mitchells at the time of trial, but they elected to preclude the court from considering any evidence regarding the criminal action. Thus, they cannot assert this evidence as a basis for reversal on appeal. Moreover, on our review of the documents, we find nothing in the communications showing improper conduct or that the civil action was brought in bad faith or that the court's findings were unsupported.

We also reject the Mitchells' related arguments that the Association was motivated by bad faith in bringing the litigation because the Mitchells had already agreed to move out of the development. As discussed, the evidence did not support this assertion and there was a reasonable basis for the court to find the dogs continued to constitute a threat to the neighborhood despite the Mitchells' claims regarding their relocation.

We also find unhelpful the Mitchells' reliance on *Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743. In *Fountain Valley*, a homeowners association brought an action against a disabled senior citizen based on its belief that papers and books inside his home constituted a fire hazard. (*Id.* at pp. 747-749.) The trial court found that as a matter of law the homeowners

17

association acted reasonably. (*Id.* at p. 749.) The Court of Appeal reversed, noting the fire inspector had found no hazardous condition in the defendant's home and the association's actions reflected a "high-handed attempt to micromanage [the homeowner's] personal housekeeping" and were nothing more than "telling a senior citizen suffering from Hodgkin's disease that, in effect, he could not read in his own bed[.]" (*Id.* at pp. 754, 755.)

In this case, the Association's actions were warranted because the evidence established the Mitchell dogs were dangerous to others. Moreover, unlike *Fountain Valley*, the administrative agency (County Animal Services) did not find the homeowners' actions were appropriate. This case has no logical similarity to *Fountain Valley*.

### III.  *Civil Code Section 3342.5*

The Mitchells raise numerous contentions regarding the court's findings on the Civil Code section 3342.5 cause of action.[2] The contentions do not show reversible error.

First, any error regarding this cause of action is not prejudicial because the judgment is independently supportable under the breach of CC&R's cause of action.

Second, the evidence supports the court's section 3342.5 findings. Under section 3342.5, subdivision (a), a dog owner whose dog "has bitten a human being" must take "reasonable steps" to prevent further danger. Under section 3342.5, subdivision (b), "any

---

[2]    All further references are to the Civil Code unless otherwise specified.

18

person" may bring an action for removal or destruction of a dog if the dog "has bitten a human being on at least two separate occasions." The trial court found the Association proved the Mitchells violated section 3342.5, subdivisions (a) and (b) because the evidence showed their dogs bit at least two individuals. This finding was proper. The evidence established (and the Mitchells admitted) that their dogs bit Palacios (the landscaping employee) and Peterson (the moving company employee). The Association also presented evidence that one of the dogs bit and/or scratched Mrs. Balsiger.

The Mitchells' challenges to the section 3342.5 findings are without merit.

The Mitchells contend the court erred because section 3342.5, subdivision (g) provides that "[a] proceeding under this section is a limited civil case" and this matter was tried as an unlimited civil case. However, there was no error because the complaint asserted both limited and unlimited civil claims.

The Mitchells also argue section 3342.5 is inapplicable because Peterson and Palacios were both trespassers. Section 3342.5 provides: "Nothing in this section shall authorize the bringing of an action . . . based on a bite or bites inflicted upon a trespasser." (§ 3342.5, subd. (d).) "The essence of [a] trespass is an '*unauthorized* entry' onto the land of another." (*Civic Western Corp. v. Zila Industries, Inc.* (1977) 66 Cal.App.3d 1, 16, italics added.) The Association presented evidence showing Palacios was authorized to be working in the area next to the residential development, and that Peterson was taking a break in the same area. Based on this evidence, the court properly found the two men were invitees and not trespassers under section 3342.5, subdivision (d).

19

We also find unsupported the Mitchells' argument that the court erred because it applied section 3342.5 merely "for 'attacking behavior,' " rather than for dog "bites."  The court specifically stated it "finds that the Defendants' dogs *have bitten human beings on at least three separate occasions*" and that the dogs "were loose and were not confined or controlled on leashes as required by law and the CC&Rs."  (Italics added.)  The evidence supported this claim.

We also reject the Mitchells' argument that section 3342.5 is inapplicable because the evidence was unclear as to which of the three dogs bit which victim.  As the trial court found, because the dogs generally acted collectively and attacked the victims as a "pack," it was not necessary for the Association to identify the particular dog that was responsible for each injury.

IV.  *Claimed Evidentiary Errors*

The Mitchells contend the court made numerous evidentiary errors.

"We review a trial court's evidentiary rulings for abuse of discretion."  (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.)  The appellant has the burden to establish an abuse of discretion.  (*Ibid.*)  "Discretion is abused only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.'  [Citation.]  There must be a showing of a clear case of abuse and miscarriage of justice in order to warrant a reversal.  [Citation.]"  (*Ibid.*)  The erroneous exclusion of evidence causes prejudice to appellant amounting to a " 'miscarriage of justice' " only if "a different result would have been probable if the error had not occurred."  (*Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1480.)

20

" 'Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred.  [Citations.]'  [Citation.]"  (*Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 58.)

When asserting an evidentiary challenge on appeal, the party must identify with appropriate citations to the record the party's objection to the evidence or testimony, any arguments regarding the objection (from both sides), and the court's ruling.  (*People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 502.)  " '[A] party is precluded from urging on appeal any point not raised in the trial court.' "  (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.)  Further, when an appellant fails to support a point with reasoned argument and citations to authority, we treat the point as waived.  (*Ibid.*)

Applying these standards, we find no prejudicial error regarding any of the challenged evidentiary rulings.  The trial court carefully reviewed each asserted evidentiary objection, and sustained some of these objections and overruled others.  The court applied correct legal standards and did not abuse its discretion in its evidentiary rulings.  Further, even if there was evidentiary error, none of the errors was prejudicial. We discuss some of the challenged rulings below.

First, the Mitchells argue the court erred in admitting Exhibits 1, 5, and 6.

Exhibit 1 is an "Activity Card," prepared by County Animal Services reflecting that in 1996 one of the Mitchell dogs was involved in a dog bite incident.  At trial, the Mitchells objected to the document on the basis of hearsay, lack of foundation, and speculation.  The court overruled the objections.  In their appellate brief, the Mitchells argue Exhibit 1 was improperly admitted because it contained an incorrect address.  We

21

need not determine whether this exhibit was properly admitted because there is no showing this document had any effect on the court's rulings. There is no indication the court considered the fact that one of the Mitchell dogs was involved in a biting incident in 1996 as part of its determination whether the dogs currently posed a problem at the Costa Del Sol development. The Mitchells argue the court's admission of the document was prejudicial because the court cited the document repeatedly in its statement of decision. This argument is factually unsupported. The court's reference to Exhibit 1 in its statement of decision is to the CC&R's which is Exhibit 1 to the Complaint, and not to this 1996 County Animal Services document.

With respect to Exhibit 5 (the quarantine order), the Mitchells forfeited any challenges to the admission of this document because their counsel specifically stated he had "No objection" to the admission of this document. In any event, the document was highly relevant and the Association presented the appropriate foundation, including the testimony of the County Animal Services officer who prepared the order.

Exhibit 6 is a County Animal Services document pertaining to the Peterson dog bite incident. The Mitchells argue it is inadmissible because it was a "one-sided" report. However, the fact that a document is "one-sided" is not a valid basis for an evidentiary objection. Moreover, the report is not one-sided, as it contains Mrs. Mitchell's lengthy handwritten statement explaining her version of the events.

The Mitchells also object to the testimony of animal control officers Julia Bixby and Lupe Villa and the testimony of Palacios's supervisor. They argue the testimony constituted improper "opinion" testimony and/or hearsay. These arguments are without

22

merit. These individuals testified to their first-hand observations, and not to inadmissible opinions or hearsay.

We similarly reject the Mitchells' objection to Shelly Yeager's testimony. Yeager was a proper rebuttal witness, and her testimony was relevant to the issue of the dogs' dangerousness, particularly around other dogs and young children. The Mitchells argue that Yeager was a "surprise" witness, but fail to support this contention with a record citation. Moreover, we reject the Mitchells' argument that Yeager's testimony was unreliable because she testified to an incident that occurred more than six years before trial. Yeager indicated that the incident was very frightening and she had not forgotten the details. Further, the Mitchells do not cite to the record showing they objected to Yeager's testimony, and the grounds for the objection. Thus, they have failed to preserve this evidentiary challenge. (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 800 (*Dietz*).)

## V. *Alternative Dispute Resolution Certification Requirement*

The Mitchells contend the trial court had no jurisdiction because the Association did not timely comply with former section 1369 et seq., which requires homeowners associations to certify that they submitted the dispute to alternative dispute resolution before filing a superior court complaint.[3] (See § 1369.520, subd. (a).)

---

[3]  Effective January 1, 2014, the statutes relating to common interest developments contained in former Civil Code section 1350 et seq. have been repealed and are restated in Civil Code sections 4000 through 6150. Because the former statutes continue to apply here, we continue to cite to those former statutes.

23

Shortly after the Association filed its complaint, the Mitchells demurred on the ground the Association failed to file the required alternative dispute resolution certification. (See § 1369.520, subd. (a).) The trial court overruled the demurrer, finding: (1) the Association remedied the procedural defect by subsequently filing a certificate that complied with the applicable statutes; and (2) dismissing the action would result in "substantial prejudice" to the Association and thus was not a proper basis for a demurrer (§ 1369.560, subd. (b)).

The court's ruling was proper. First, contrary to the Mitchells' assertions, the timely filing of the certificate of alternative dispute resolution is *not* jurisdictional. The code section states a court may excuse the requirement based on a finding of substantial prejudice. (See § 1369.560, subd. (b).) The trial court specifically found that enforcing the certification requirement and requiring the Association to dismiss and refile the action with the certification would result in substantial prejudice to the Association because of the immediate danger posed by the dogs to children in the neighborhood. This finding was supported by the evidentiary record. In addition, shortly after the Mitchells raised the issue, the Association did file the certification showing a proper exception to the alternative dispute requirement—that temporary or preliminary relief was necessary in this case. (§ 1369.560, subd. (a)(3).)

In a related argument, the Mitchells contend the judgment must be reversed because the CC&R's require the parties to submit a claim to mediation and, if unsuccessful, to a judicial referee. However, there is no showing that the Mitchells timely raised this issue in the trial court. Thus, it is not preserved on appeal. (*Dietz,*

24

*supra*, 177 Cal.App.4th at pp. 799-800.)  Further, there is an indication in the record that the parties had been ordered to mediation and that the mediation was not successful.

VI.  *Court's Order Granting Association's Anti-SLAPP Motion*

The Mitchells contend the court erred in granting the Association's anti-SLAPP motion.  The contention is not properly before us.

The Mitchells' amended cross-complaint asserted breach of fiduciary duty and statutory violations.  The Association moved to strike the pleading under the anti-SLAPP statute.  (Code Civ. Proc., § 425.16.)  The court granted the motion, and issued a lengthy minute order explaining the grounds for its ruling.  On March 23, 2011, the court filed a notice of ruling attaching "the Court's final ruling" granting the motion to strike and dismissing the Mitchells' amended cross-complaint.  The Mitchells did not appeal from the order.  Two months later, the court issued an attorney fees order awarding $4,532.50 to the Association for prevailing on the anti-SLAPP motion.  (Code Civ. Proc., § 425.16, subd. (c).)

The trial was held seven months later in January 2012.  The final judgment was filed on April 9, 2012, and the notice of entry of the judgment was filed on April 23, 2012.  The Mitchells filed their notice of appeal on April 9, 2012.

The Mitchells devote a substantial portion of their appellate briefs challenging the court's ruling on the anti-SLAPP motion.  These challenges are untimely.

An order granting an anti-SLAPP motion is immediately appealable.  (Code Civ. Proc., §§ 425.16, subd. (i), 904.1, subd. (a)(13).)  If a judgment or order is appealable, an aggrieved party must file a timely appeal or forever lose the opportunity to obtain

25

appellate review. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8.) This rule applies to orders granting or denying anti-SLAPP motions. (See *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1246-1247.) A party may not wait until the final judgment to appeal an order dismissing some but not all causes of action under the anti-SLAPP statute. (*Ibid.*)

Under these principles, the Mitchells' appeal of the court's anti-SLAPP order was untimely because they filed their notice of appeal more than one year after the court entered the order granting the Association's anti-SLAPP motion. (See *Maughan, supra*, 143 Cal.App.4th at pp. 1246-1247.)

The Mitchell's reliance on *Doe v. Luster* (2006) 145 Cal.App.4th 139 (*Doe*) is misplaced. In *Doe*, the court held an interlocutory order *denying a motion for attorney fees* incurred on an anti-SLAPP motion is not an appealable order. (*Id.* at pp. 145-150.) In so holding, the court limited its ruling to an attorney fees order filed subsequent to the anti-SLAPP order, and reaffirmed the general rule that an " 'order granting or denying a special motion to strike' " is immediately appealable. (*Id.* at p. 146.)

The Mitchells have not raised any appellate arguments regarding the order awarding the Association attorney fees on the anti-SLAPP motion. Thus, *Doe*'s holding regarding the appealability of attorney fees orders is inapplicable here.

## VII. *Scott Mitchell's Liability*

The Mitchells contend the court erred in holding Scott Mitchell liable because the "dogs are solely registered to Mary Mitchell . . . and only Mary was prosecuted by the City Attorney for misdemeanors due to her dog ownership." The argument is without

26

merit. First, the argument is waived because the Mitchells do not cite to the record showing they asserted the argument in the proceedings below. (See *Dietz, supra*, 177 Cal.App.4th at p. 800.) Second, the Mitchells do not cite to any evidence in the record supporting the argument that the dogs were registered only under Mrs. Mitchell's name. In their appellate briefs, they refer only to exhibits that were not admitted at trial. Third, even assuming Mrs. Mitchell was the registered owner and was the sole person criminally prosecuted for the dogs' conduct, the evidence showed Mr. Mitchell was a coowner of the property, lived at the property, and had ownership and control rights over the dogs. Thus, the court did not err in including him as a party to the injunction and on the monetary award.

We also reject the Mitchells' argument that Mr. Mitchell cannot be held liable because he negotiated "in good faith" with the Board before the Association brought the lawsuit. Unsuccessful settlement negotiations, even if they are made in good faith, do not preclude a court from entering judgment against a party.

DISPOSITION

Judgment affirmed.  Appellants to pay respondent's costs on appeal.


HALLER, Acting P. J.

WE CONCUR:


McDONALD, J.


McINTYRE, J.