[No. H032576. Sixth Dist. Nov. 23, 2010.]

JOYCE TURMAN, Plaintiff and Appellant, v.
TURNING POINT OF CENTRAL CALIFORNIA, INC., Defendant and
Respondent.

COUNSEL

Law Offices of Kathleen P. Clack, Kathleen P. Clack; Doyle & Schallert, David Douglas Doyle and Mark Schallert for Plaintiff and Appellant.

Cooper & Cooper and Joseph D. Cooper for Defendant and Respondent.

OPINION

**RUSHING, P. J.**—Appellant Joyce Turman sued her former employer, respondent Turning Point of Central California, Inc., for gender discrimination based on disparate treatment and a hostile work environment. At the conclusion of the evidence at trial, the court instructed the jury on disparate impact rather than disparate treatment, opining that the evidence produced at trial supported the former. The jury returned a verdict in favor of respondent, specifically finding that respondent did not have an employment practice that had a disproportionate effect on women. In addition, the jury found that while appellant was subjected to a hostile work environment, respondent did not fail to take immediate and corrective action to alleviate the harassment.

On appeal, appellant claims there was not substantial evidence to support the jury's finding that defendant did not fail to take immediate and corrective action to alleviate appellant's hostile work environment. In addition, appellant asserts the trial court erred by failing to instruct the jury on disparate treatment. Appellant also asks that in the event we remand the matter for a new trial, her punitive damages allegations be revived.

### STATEMENT OF THE FACTS AND CASE

Respondent owns and operates a number of halfway house facilities in California wherein federal and state prisoners are housed to transition them into the workforce and society prior to their full release on parole. Appellant was employed by respondent as a resident monitor at a halfway house in Salinas from 1999 until her termination in 2004. Residents of the house were still considered in custody, and were subject to strict regulations and regular drug testing.

Appellant began to work the overnight shift from 11:30 p.m. until 12:00 p.m. in May 2001. During the day, appellant worked for Easter Seals as a primary caregiver for a quadriplegic. Respondent knew and approved of appellant's Easter Seals job. Appellant continued to work this shift until December 2003, when she went on vacation. Upon returning from vacation, appellant was informed that her shift had been changed to 2:00 p.m. until 10:00 p.m. Appellant reminded her supervisor, Larry Telles, about her job at Easter Seals, and asked if she could stay on the night shift. Telles refused the request for the night shift, and proposed the 4:00 p.m. to midnight shift, informing appellant that she needed to choose between the Easter Seals job and her job with respondent.

Appellant's job at the house included conducting urinalysis drug testing of residents, and citing residents for disciplinary violations. Discipline was progressive, and appellant would write residents up for various violations including intoxication, profanity, disrespect of others, and fighting. Residents complained to Telles about the number of disciplinary citations appellant would issue. After hearing these complaints, Telles often sided with the residents, and reversed the citations appellant had issued. During the time appellant worked for respondent, she wrote 200 to 300 disciplinary citations; however, she never knew of a single incident in which Telles wrote up a resident, including times when she saw residents visibly drunk in the house.

Because of the disparity in the issuance of disciplinary citations between appellant and Telles, there was considerable ongoing tension in the house. While appellant was at work, male residents would proposition her for sex, exhibit sexual gestures in front of her, and call her a "whore," "hoe," "bitch" and "cunt." When appellant told Telles about the residents' conduct, his response was to tell her, "they don't really mean it," or that she should "try and be nicer to 'em." The abuse by the residents made appellant feel degraded and sick. The only advice Telles gave appellant about the abuse was that she should not write up the residents for disciplinary violations as often as she did. The abuse continued daily from 2002 until appellant's termination in 2004.

On January 8, 2004, appellant requested time off in writing because of work-related stress connected to the resident abuse. Respondent denied the request for time off on the grounds that it was short on staff.

On January 9, 2004, appellant was terminated. The reason stated in the termination memorandum appellant received was that a reduction in staff was necessary due to ongoing financial difficulties, and that two employees would no longer be working at night. In addition, the memorandum stated that she could not work the night shift, because "our federal contract prohibits having

a woman working alone at night." The memorandum also stated that appellant had an opportunity for reemployment as of February 1, 2004, in a different shift. Appellant declined reemployment due to her job with Easter Seals.

Appellant filed a third amended complaint in December 2006 that alleged a single cause of action for gender discrimination in violation of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) based on disparate treatment related to respondent's given reason for her termination that women could no longer work alone at night, and hostile work environment based on the resident abuse. The third amended complaint also sought punitive damages.

The filing of the third amended complaint followed the trial court's sustaining respondent's repeated demurrers with leave to amend. Each demurrer asserted that appellant failed to state sufficient facts to support her punitive damages allegations. The trial court overruled the final demurrer to the third amended complaint, but granted respondent's motion to strike the punitive damages allegations.

The matter was tried before a jury in October 2007. Respondent's defense at trial was that women could not work alone at night at the facilities, because a male was required to conduct urinalysis drug testing on male residents. Because respondent was experiencing financial difficulties, it could only afford to have one staff member working at night, and that employee needed to be male for drug testing purposes.

At the conclusion of evidence, the trial court opted to instruct the jury on the theory of disparate impact rather than disparate treatment, finding that the evidence produced showed that respondent had a facially neutral policy of requiring employees of the same sex to perform urinalysis testing on residents. According to the trial court, this evidence did not support a theory of disparate treatment. With regard to disparate impact, the jury found by special verdict that respondent did not "have an employment practice . . . that had a disproportionate adverse effect on women." On the hostile work environment theory, the jury found by special verdict that appellant had been subjected to severe and widespread harassment because she was a woman, that created a hostile work environment, but that respondent did not "fail to take immediate and appropriate corrective action."

Judgment was entered in favor of respondent, and appellant filed a notice of appeal.

## Discussion

Appellant asserts there was not substantial evidence to support the jury's finding that respondent did not fail to take immediate and corrective action to correct the hostile work environment to which appellant was subjected. In addition, appellant argues the trial court committed reversible error when it refused to instruct the jury on her disparate treatment claim. Appellant seeks a reversal of the judgment, a new trial, and the revival of her punitive damages allegations originally stated in her complaint.

Article VI, section 13 of the California Constitution provides that a judgment cannot be set aside "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." "This fundamental restriction on the power of appellate courts is amplified by Code of Civil Procedure section 475, which states that trial court error is reversible only where it affects '. . . the substantial rights of the parties . . . ,' and the appellant 'sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed.' Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred. [Citations.]" (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833 [16 Cal.Rptr.2d 38].)

### Jury's Finding on Hostile Work Environment Claim

Appellant asserts there was not substantial evidence produced at trial to support the jury's verdict that respondent did not fail to take immediate corrective action to alleviate appellant's hostile work environment.

In reviewing a challenge to the sufficiency of the evidence, we are bound by the substantial evidence rule. All factual matters must be viewed in favor of the prevailing party and in support of the judgment. All conflicts in the evidence must be resolved in favor of the judgment. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925–926 [101 Cal.Rptr. 568, 496 P.2d 480].)

■ Appellant's single cause of action for gender discrimination in this case is brought under the FEHA, found at Government Code section 12940. FEHA establishes liability where nonemployees sexually harass an employee and the employer does not take action to alleviate the harassment. Subdivision (j)(1) of section 12940 provides, in relevant part: "An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees, applicants, or persons providing services pursuant to a contract in the workplace, where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees,

the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of those nonemployees shall be considered. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment."

At the conclusion of trial, the jury found appellant was subjected to a hostile work environment based on her gender. Through a special verdict, the jury answered "[y]es" to specific questions of whether appellant was an employee of respondent, whether she was subjected to unwanted harassing conduct because she was a woman that was so severe, widespread, or persistent that a reasonable woman in appellant's position would have considered the work environment to be hostile, and whether respondent knew or should have known of the abusive conduct. However, the jury also specifically responded "[n]o" to the question, "[d]id [respondent] or its supervisors fail to take immediate and appropriate corrective action?"

The evidence produced at trial was clear that appellant was subjected to sexual harassment by residents of the facility, in the form of lewd and sexually offensive name calling and reference to sexual acts. It is undisputed that the jury's finding that appellant endured a hostile work environment because of the harassment is supported by substantial evidence.

However, what is disputed is whether respondent took corrective action to alleviate the hostile work environment for appellant. The jury specifically answered "[n]o" to the question of whether respondent "fail[ed] to take immediate and appropriate corrective action." Appellant asserts there was no substantial evidence to support the jury's finding that respondent did not fail to take corrective action to alleviate the hostile work environment.

Respondent provides no reference to any evidence presented at trial that shows it took any corrective action to alleviate the hostile work environment. Instead, respondent asserts that "harassment by prisoners is inherently part of the job." While it may be true that male residents who are living under restricted conditions are likely to harass or mistreat their female supervisor, this does not absolve respondent of its legal responsibility under FEHA to take immediate and appropriate action to correct the situation.

The Ninth Circuit Court of Appeal rejected an argument similar to respondent's in *Freitag v. Ayers* (9th Cir. 2006) 468 F.3d 528 (*Freitag*), in which a female prison guard sued the Department of Corrections and Rehabilitation under title VII of the Civil Rights Act of 1964 (Pub.L. No. 88-352, 78 Stat.

241) (Title VII),[1] for the hostile work environment she endured at Pelican Bay State Prison. In *Freitag*, the defendant argued that "prisons, due to their distinctive character and problems, and in particular their 'inherently hostile environment,' [should be] immune from lawsuits by correctional officers arising from sexual harassment by inmates." (468 F.3d at p. 538.) The court recognized the challenges posed in a restrictive prison environment; however, it also noted that such challenges do not absolve an employer of liability for failing to take reasonable steps to alleviate abuse of employees. The court stated, "Nothing in the law suggests that prison officials may ignore sexually hostile conduct and refrain from taking corrective actions that would safeguard the rights of the victims, whether they be guards or inmates." (*Id.* at p. 539.)

Here, respondent did not demonstrate any reasonable effort taken to alleviate the hostile work environment created by the residents of the halfway house. Indeed, it appears the only response to appellant's reported abuse was her supervisor telling her that she should issue fewer disciplinary citations to the residents so they would not continue to be mad at her. Such conduct does not amount to corrective action to alleviate the abuse.

While enduring inappropriate behavior by prisoners may be "inherently part of the job" in a restrictive, penal environment, respondent cannot refrain from taking corrective action to preserve appellant's right to be free from a hostile work environment. There is no evidence in the record before us that any corrective action was taken.

Reviewing all factual matters in favor of respondent and in support of the judgment as we are charged to do, we do not find substantial evidence in the record that respondent took corrective action to alleviate the abuse to which appellant was subjected. As a result, the jury's finding in the special verdict that respondent did not fail to take immediate and corrective action is not supported by substantial evidence, and the judgment must be reversed.[2]

---

[1] In light of the similarities between Title VII and FEHA, California courts frequently seek guidance from Title VII decisions when interpreting FEHA and its prohibitions against sexual harassment. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 278 [42 Cal.Rptr.3d 2, 132 P.3d 211].)

[2] We are compelled to note the misleading quality of the questions in the special verdict form for hostile work environment. Aside from the lack of substantial evidence to support the finding that respondent did not fail to take immediate and corrective action, this special verdict form should not have been given to the jury. The phrasing of question 6, and its placement in the series of questions in the special verdict form for hostile work environment are systematically misleading. Specifically, the questions in the special verdict form are as follows: "1. Was [appellant] an employee of [respondent]?"; "2. Was [appellant] subjected to unwanted harassing conduct because she was a woman?"; "3. Was the harassment so severe, widespread, or persistent what a reasonable woman in [appellant]'s circumstances would have considered the

*Disparate Impact Instruction*

Appellant asserts the trial court erred in failing to instruct the jury on the theory of disparate treatment, opting to instruct instead on disparate impact. Appellant argues that because of this error, she is entitled to a reversal and a new trial on this theory of her case.

"A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298].) Instructional error in a civil case is prejudicial " 'where it seems probable' " that the error " 'prejudicially affected the verdict.' " (*Ibid.*) "[W]hen deciding whether an error of instructional omission was prejudicial, the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580–581.)

■ At the conclusion of evidence in this case the court opted to instruct the jury on disparate impact, finding that the evidence produced did not support disparate treatment. Disparate treatment and disparate impact are different theories of discrimination, requiring different proof. " 'Disparate treatment' is *intentional* discrimination against one or more persons on prohibited grounds. [Citations.] Prohibited discrimination may also be found on a theory of 'disparate impact,' i.e., that regardless of motive, a *facially neutral* employer practice or policy, bearing no manifest relationship to job requirements, *in fact* had a disproportionate adverse effect on members of the protected class." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354, fn. 20 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

In making its decision on how to instruct, the court stated: "Now, it is very true [appellant] controls what claims they make. But at this stage of trial,

work environment to be hostile or abusive?"; "4. Did [appellant] consider the work environment to be hostile and abusive?"; and "5. Did [respondent] or its supervisors know or should they have known of the conduct?" Each of these five questions asks the jury to consider the existence of an affirmative fact. However, question 6 abruptly reverses course, and asks the jury to consider the existence of a negative, stating, "Did [respondent] or its supervisors *fail* to *take* immediate and appropriate corrective *action*?" (Italics added.) Based on the format of the five preceding questions, question six should have been phrased, "Did [respondent] take immediate and appropriate corrective action?" If question 6 had been so phrased, it would have followed the same format as the five previous questions. In addition, it would have clearly asked the jury the ultimate question of whether respondent *actually* fulfilled its legal obligation to alleviate known harassment in the workplace, not whether it *failed* to fulfill that obligation.

what I am really looking at . . . is there evidence to support the instruction [for disparate treatment]? I don't think, as I see this case presented, it starts with the policy that led to the determination of the shift charge or shift requirements when they have a downturn that requires reduction in staff to one counselor on a shift was based on what is, I'm finding, to be a neutral policy that applies across the board that the same sex has to take—you can only take urinalysis of the same sex as a counselor."

The court further stated: "[T]he policy that the same sex must do the urinalysis applies to men and women equally. So that a man can't take a female's [urine sample] under that policy, and a female can't take a man's [urine sample]. And then it would have a disparate impact. It's a facially neutral policy because it applies for males and females equally. But its impact is only on females because the program is primarily, if not totally, male offenders."

Here, respondent presented a two-part defense to the claim of unlawful termination in violation of FEHA. First, respondent asserted that due to financial difficulties, it needed to reduce the number of employees for the overnight shift from two to one. In addition, respondent asserted that if only one employee was on duty for the overnight shift, that employee needed to be male in order to conduct urinalysis drug tests on male residents.

The evidence presented at trial of respondent's policy of same sex urinalysis, and its financial need for reduced employees during the overnight shift is consistent with a theory of disparate impact. By our evaluation of the record, the evidence showed that respondent implemented a facially neutral policy that the same sex employee must administer urinalysis drug testing to residents. Therefore, the court's decision to instruct the jury on disparate impact, rather than disparate treatment was appropriate, and was not in error.

*Disparate Impact Special Verdict*

Appellant asserts she is entitled to a new trial on the disparate impact theory, because the special verdict was incomplete, and inherently contradictory.

With regard to the theory of disparate impact, the jury answered, "[n]o" to the question "Did [respondent] have an employment practice—that staff of the same sex as the offender tested shall directly supervise the giving of the urine sample—that had a disproportionate adverse effect on women?"

Appellant argues the question is incomplete as stated, because it does not also include the fact that because of the policy, women were prohibited from working alone at night.

While appellant asserts she is entitled to a new trial because the special verdict was incomplete, she does not demonstrate how its alleged deficiencies caused her to sustain and suffer substantial injury, nor does she show " 'that a different result would have been probable if such error . . . had not occurred or existed.' " (*Waller v. TJD, Inc., supra,* 12 Cal.App.4th at p. 833.) Appellant has not met her burden of demonstrating that a miscarriage of justice occurred based on deficiency in the special verdict for disparate impact.

*Punitive Damages*

Appellant asserts that in the event the matter is remanded for a new trial, her punitive damages allegations that were stricken pursuant to respondent's motion to strike be revived.

Here, the trial court sustained multiple demurrers on the ground that appellant failed to adequately state a claim for punitive damages. Ultimately, the court overruled respondent's demurrer to the third amended complaint, but granted a motion to strike the punitive damages.

The standard of review for an order on a motion to strike punitive damages allegations is de novo. (*Clauson v. Superior Court* (1998) 67 Cal.App.4th 1253, 1255 [79 Cal.Rptr.2d 747].) "In passing on the correctness of a ruling on a motion to strike, judges read allegations of a pleading subject to a motion to strike as a whole, all parts in their context, and assume their truth." (*Ibid.*)

In order to state a prima facie claim for punitive damages, a complaint must set forth the elements as stated in the general punitive damage statute, Civil Code section 3294. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 721 [34 Cal.Rptr.2d 898, 882 P.2d 894].) These statutory elements include allegations that the defendant has been guilty of oppression, fraud or malice. (Civ. Code, § 3294, subd. (a).) " 'Malice' " is defined in the statute as conduct "intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1); see *College Hospital, supra,* 8 Cal.4th at p. 725.) " 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) " 'Fraud' " is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." (Civ. Code, § 3294, subd. (c)(3).)

While the third amended complaint does allege facts sufficient to state a cause of action for gender discrimination, it fails to state facts sufficient to

support allegations that respondent acted with malice, oppression or fraud, as required by statute. Appellant persists that the punitive damages allegations are adequately pled, relying primarily on the underlying facts associated with the cause of action for gender discrimination. However, as pled in this complaint, such facts do not rise to the level of malice, oppression or fraud necessary under Civil Code section 3294 to state a claim for punitive damages. Therefore, the punitive damages allegations should not be revived when the matter is reversed and remanded.

### DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings related to the violation of FEHA based on a theory of hostile work environment.

Premo, J., and Elia, J., concurred.

A petition for a rehearing was denied January 20, 2011, and respondent's petition for review by the Supreme Court was denied April 13, 2011, S190180.