Filed 4/8/15  Marriage of Locatelli CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of ANTHONY and SUZANA LOCATELLI. | B252667 |
| SUZANA LOCATELLI, | (Los Angeles County Super. Ct. No. BD516629) |
| Respondent, | |
| v. | |
| ANTHONY LOCATELLI, | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Thomas Trent Lewis, Judge.  Affirmed.

Anthony Locatelli, in pro. per., for Appellant.

No appearance for Respondent.

_____

Anthony Locatelli, in propria persona, appeals from a judgment entered in this marital dissolution action. His former wife, Suzana Locatelli, did not file an appeal brief or otherwise appear. Anthony[1] challenges the judgment of dissolution on the following grounds: (1) Judge Lewis was "corrupt" because he received purportedly unconstitutional supplemental benefits from the County of Los Angeles and because he refused to recuse himself; (2) Judge Lewis exhibited gender bias and bias in favor of Beverly Hills lawyers in his property and custody findings; (3) Judge Lewis's findings as to spousal support, child support, breach of fiduciary duty, and community property were erroneous; (4) Judge Lewis failed to appoint a lawyer for Anthony especially after the court allegedly lost key financial documents; (5) Judge Lewis forced Anthony to pay for a custody evaluator, who was the judge's friend; (6) Judge Lewis's imposition of a "lifetime restraining order" branding Anthony a domestic violence perpetrator violated his Second Amendment rights under the United States Constitution and resulted in unfair child support decisions; (7) Judge Lewis erred in admitting a stipulation regarding the Beryl Street property into evidence; and (8) Judge Lewis erroneously denied awarding him attorney fees.

We have examined each of Anthony's challenges and conclude that they fail for one or more of the following reasons: (1) substantial evidence, including taking all inferences in support of the judgment, supported the family court's findings; (2) Anthony forfeited his challenge when he failed to provide citation to the record and supporting legal authority; or (3) the challenge was legally incorrect. For the reasons set forth below, we affirm the family court's judgment.

---

[1] We refer to the parties by their first names to prevent confusion and mean no disrespect by doing so.

## FACTUAL AND PROCEDURAL BACKGROUND

Anthony and Suzana were married on April 28, 2001. They had a daughter, who was born in 2007. They separated on December 8, 2009. A judgment of dissolution was filed on September 9, 2013. Anthony filed his notice of appeal on November 8, 2013.

**The Beryl Street stipulation**

Susanna and Anthony entered into a "stipulation re Beryl Street property," which was filed on January 10, 2011 (Beryl Street stipulation). The Beryl Street stipulation provided, among other things, that Anthony would be responsible for monthly mortgage payments, property taxes, homeowners insurance, utilities, and maintenance expenses on real property located on Beryl Street (Beryl Street property) until it was sold or he vacated the property. The Beryl Street stipulation was admitted in trial as exhibit 172.

**Anthony's earlier efforts to disqualify the trial judge**

On July 8, 2011, Anthony filed a request for recusal of Judge Lewis. Anthony stated that he had filed a civil action in San Diego against Judge Lewis, and that Judge Lewis should recuse himself on the ground that "a personlly [*sic*] aware of [this] fact might reasonably entertain a doubt that the judge would be able to be impartial" and cited Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii).[2] On July 13, 2011, Judge Lewis filed an answer to Anthony's challenge for cause and supporting memorandum of points and authorities, in which Judge Lewis noted that Anthony had filed a civil action in San Diego against Judge Lewis and other judicial officers, challenging their receipt of supplemental judicial benefits from the County of Los Angeles. Judge Lewis contended, among other arguments, that the San Diego lawsuit appeared to be an attempt to engineer his disqualification in the marital dissolution matter and had no merit because "Government Code section 68220, subdivision (a), expressly provides for the payment of supplemental judicial benefits."

On July 21, 2011, Anthony's recusal request was referred to the Judicial Council for assignment to an out-of-county judicial officer; the matter was assigned on the same

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

day to Orange County Superior Court Judge David Thompson. On August 4, 2011, Anthony's motion to disqualify Judge Lewis was denied because the statement of disqualification was unverified, the filing of the San Diego lawsuit was not a legal basis for disqualification, and judges are immune from suit based on the performance of their judicial functions. Anthony's subsequent petition for a writ of mandate to the Court of Appeal challenging that ruling was denied on August 25, 2011. (*Locatelli v. Superior Court* (Aug. 25, 2011, B235264).) The statement of disqualification was ordered struck on October 25, 2011.

Anthony filed another statement of disqualification on April 23, 2014, which was ordered struck on April 28, 2014, pursuant to section 170.4, subdivision (b) as untimely and lacking in legal basis, and pursuant to section 170.4, subdivision (c)(3) on the basis that it was repetitive and raised no new grounds supporting disqualification since Anthony's last statement of disqualification. No petition for a writ of mandate by Anthony appears in the record. We, however, take judicial notice of a petition for a writ of mandate filed by Anthony on May 8, 2014, with respect to the April 28, 2014 order. We also take judicial notice of our order filed on May 14, 2014, in which we considered and denied Anthony's writ petition. (*Locatelli v. Superior Court* (May 14, 2014, B256123).)

**The memorandum of intended decision**

Judge Lewis presided over the dissolution trial on February 26, 2013. Anthony and Suzana testified at length at trial and several trial exhibits were admitted. On April 19, 2013, a memorandum of Judge Lewis's intended decision and order thereon (intended decision) was filed. The intended decision describes in what manner the parties could file objections or an alternative statement of decision, and recites that it "shall be the Court's Statement of Decision." A minute order dated April 19, 2013, provides that the family court made its ruling pursuant to the intended decision and incorporates that decision by reference.

In its intended decision, the family court noted there had been a prior trial on child custody issues, which were subject to postjudgment modification proceedings, and that

4

the court had bifurcated the issue of attorney fees and costs.  The trial before the court thus related to "issues of support and property division."

The family court also noted that it had made "a prior finding of domestic violence based on Anthony's conduct toward Suzana" and that "[w]hen requested the court extended the order of protection as a permanent order against Anthony for the benefit of Suzana."  The court observed that in the "renewal of the restraining order proceedings" at trial,  Suzana's testimony was "essentially unrebutted that Anthony maintained possession of firearms and violated this term of the prior order."

The family court referenced an attached "property balance sheet" in which the court summarized its findings with respect to the valuation and division of assets and obligations.  The court also ordered Anthony to pay child support "based on the findings of the court derived from their respective income and expenses declarations" and findings in the property balance sheet.  The court noted the parties' dispute as to the date of separation and found that the date of separation was December 8, 2008, based on the court's analysis of factors derived from case law.

The family court proceeded to characterize property as separate and community and faulted Anthony for commingling separate and community expenses regarding the Beryl Street property and failing to trace his separate property in an IRA.  He also found that Anthony had breached his fiduciary duty in withdrawing funds from the IRA without the court's consent.

The family court found that Suzana had failed to carry her burden of proof as to the net rental value of the Beryl Street property while Anthony lived there and denied her claim that Anthony had breached his fiduciary duty as to the purported reduced sales price for that property.  The court also found that Anthony had a community interest in stock options that Suzana's employer, Bebe, Inc., had given her, and that she had to exercise that option for Anthony's benefit upon Anthony's payment of sufficient funds to enable her to pay for his portion of those shares and the resulting tax liability.

As for spousal support, the court concluded that "[t]he evidence [shows] that the parties expended nearly their entire net worth litigating custody, domestic violence, and

5

to a lesser extent the property issues," and that "neither party has sufficient assets to consider in fixing spousal support." The court also made the following observations regarding spousal support:

"Suzana enjoys higher income than Anthony as a factor under [Family Code] *§4320(a)*. However, this higher income is largely a function of the premium paid for her working in Santa Monica. Suzana's basic living expenses are correspondingly higher than Anthony's based principally on the locale of her employer. Both parties are employed at salaries and benefits consistent with their earning capacity. The evidence shows that Anthony has had higher paying jobs in the past, but there was not sufficient evidence for the court to conclude that he had another job opportunity consistent with his skills and child care responsibility which he deliberately refused to pursue. There is no evidence that either party is lacking marketable skills; nor does the evidence support the conclusion that either party is deliberately depressing their earning capacity [[Fam. Code,] *§4320(a)(1)*]." (Fns. omitted.)

"Anthony was found responsible for acts of domestic violence against Suzana in pretrial proceedings [[Fam. Code,] *§4320(i)*]. This fact alone shifts the burden of proof to Anthony and he has not demonstrated any basis for the court to find any adequate basis for the court to order him (the perpetrator of domestic violence) to pay Suzana the victim of domestic violence. Anthony fails to rebut the finding of domestic violence as a factor in denying him spousal support." (Fn. omitted.)

"Finally, in balancing the hardships upon each party [[Fam. Code,] *§4320(k)*] and such other factor as the court deems just [[Fam. Code,] *§4320(n)*] the court determines that it is not in the best interest of the minor child to leave open the issue of spousal support between these two warring parents who have liquidated their net worth in nitpicking wars of attrition over every aspect of their divorce."

"Whether intentionally or unintentionally, Anthony has abused the court process by filing numerous unsupported declarations; and he has litigated at every turn with Suzana about certain matters that could have been easily resolved. For her part, Suzana has used the court process in ways that did not minimize conflict between the parties.

6

Taking into account this extremely high conflict case with all the other factors, the court concludes that it is in the best interest of the minor child to terminate jurisdiction over spousal support in this case."  (Fn. omitted.)

"The court divests itself of jurisdiction to award support [citation] to either party for all the . . . reasons stated above, including but not limited to the following:  (a) the parties are substantially self-supporting (b) the parties are in good health [[Fam. Code,] *§4320(h)*] (b) [*sic*] while Suzana is the higher earner, she also has higher time responsibility for the minor child [[Fam. Code,] *§4321(b)*, (c)]; this is not a long term marriage; and (d) Anthony has committed domestic violence against Suzana.  For the foregoing reasons, the court terminates jurisdiction to award either party spousal support."  (Fn. omitted.)

**The judgment of dissolution**

The judgment of dissolution between Anthony and Suzana (judgment) was filed on September 9, 2013.  The judgment references a final statement of decision entered on July 26, 2013.  The record on appeal does not contain such a document, nor does the superior court case summary refer to it.[3]

**Child support orders**

The judgment ordered Anthony to pay Suzana monthly base child support and child care costs.  The judgment recited that the order of child support was based on Anthony's and Suzana's income expense declarations as to salary, Anthony's rental income, health insurance payments, property tax and mortgage interest expenses, and childcare costs; testimony and evidence admitted at trial; and a "a thirty-five percent . . . custodial timeshare for Anthony."

**Property division orders**

The judgment cross-referenced the property balance sheet accompanying "its Final Statement of Decision and Order Thereon entered on July 26, 2013," and repeated its

---

[3] On our own motion, we take judicial notice of the superior court's case summary.  (Evid. Code, § 452.)

7

findings regarding property distribution and characterization of property as separate or community in its intended decision. The judgment reflected that the family court denied both Suzana's and Anthony's request to "charge" each other with breach of fiduciary duty regarding the Beryl Street property. The judgment stated, in pertinent part, that "Anthony failed to demonstrate that the other sale would have been completed by a preponderance of the evidence."

The judgment further recited that "Anthony failed to trace his separate property claim in the Beryl proceeds by a preponderance of the evidence beyond the amount acknowledged by Suzana in the sum of $31,906.20 which is awarded to Anthony as his Family Code § 2640 reimbursement. The $31,906.20 reimbursed to Anthony shall be charged with any reimbursements he owes to the community estate or any amounts he is charged with under the terms of this property division unless specified to the contrary. As Suzana demonstrated, the funds were commingled into a joint account; and Anthony did not present admissible evidence to support a tracing of his separate property."

**Spousal support orders**

As noted above, the judgment terminated jurisdiction over spousal support to Anthony and Suzana, "based on all the reasons set forth in the Court's Statement of Decision and Orders Thereon upon which this Judgment is based."

**Anthony's filings in this court and recent efforts to disqualify Judge Lewis**

On November 8, 2013, Anthony filed a notice of appeal from the judgment of dissolution. As described *ante*, Anthony previously filed two writs of mandate regarding his efforts to disqualify Judge Lewis. On March 13, 2015, Anthony filed a "Motion to Stay Lower Court Proceedings; to Consolidate Original Proceeding No. B262131 and Appeal No. B252667; and to Transfer to a Different District and Panel" (March 13, 2015 motion). In that motion, he sought, among other things, a ruling that Judge Lewis should be deemed to have consented to a challenge under Code of Civil Procedure sections 170.6 and 170.1 that Anthony represented he had filed when Judge Lewis changed courtrooms, and to transfer this appeal to the appellate court for the Fourth District.

8

More specifically, Anthony argued that because Judge Lewis failed to rule on these challenges, he is deemed to have consented to his disqualification.

On February 25, 2015, Anthony also filed a petition for a writ of mandate, in which he essentially sought the same relief set forth in his March 13, 2015 motion. (*Locatelli v. Superior Court* (Feb. 25, 2015, B262131).) We denied Anthony's writ petition on March 12, 2015, and denied his March 13, 2015 motion on March 18, 2015.

With the exception of the declaration of a Tristina Cole (exhibit 9), we granted Anthony's pre-argument March 9, 2015 "Request for Judicial Notice and/or to Augment the Record on Appeal." At the March 17, 2015 oral argument, we asked Anthony to provide a copy of the challenge under Code of Civil Procedure section 170.1 that Anthony referenced in his March 13, 2015 motion, as well as the record compendium described with the acronym "BS" referenced in that same motion because the record before us did not contain either document. We allowed him five days to file these documents.

On March 20, 2015, Anthony responded with a "Request for Judicial Notice and/or to Augment the Record on Appeal per Court Request" (Request). We note that the latter Request contains additional factual summary and argument (exhibits 3C and 5), a copy of a 2009 nonpublished opinion from the Fourth Appellate District (exhibit 2), what Anthony describes as the Elkins Task Force Report (exhibit 3D), and a "Notice of Briefing Schedule and Continuance of Trial" that is not file-stamped and does not contain a proof of service (exhibit 4)—none of which we requested at oral argument.[4] With the exception of the opinion from the Fourth Appellate District (exhibit 2) and exhibits 1, 3A, and 3B, we denied Anthony's request to take judicial notice of the latter documents or to allow him to augment the record with these documents.

We also note that none of the exhibits attached to that Request is a Code of Civil Procedure section 170.1 challenge to Judge Lewis, let alone the one referenced in his

---

[4] We still have not received any compendium referencing documents with the acronym "BS."

9

March 13, 2015 motion. Indeed, in a "Statement of Facts" and "Points and Authorities," attached as exhibit 3C to the Request,[5] Anthony disclaims needing to produce a copy of any such document because he claims that Judge Lewis referred to it in an excerpt from a February 6, 2015 hearing that Anthony attached to the Request as exhibit 3B.[6] In that excerpt, Judge Lewis noted that Anthony "filed another 170.6. I think it's about the third one you filed in a series of 170.1 affidavits." We conclude that Anthony still has not provided any proof of a challenge under Code of Civil Procedure section 170.1 on which Judge Lewis has failed to rule. As for Anthony's motion to disqualify Judge Lewis under Code of Civil Procedure 170.6 when Judge Lewis moved to department 309, we take judicial notice of the notice of ruling, dated February 11, 2015, reflecting that Judge Lewis denied that motion.

At oral argument, we also requested a copy of Anthony's objections to Judge Lewis's intended statement of decision. Anthony provided a copy of what purports to be "Objections and Requested Corrections and Additions to Memorandum of Intended Decision and Order Thereon," filed and served on April 19, 2013 (attached as exhibit 1 to the Request), although that document is not file-stamped and does not contain a proof of service. We also note that exhibit 1 contains what appears to be a page from a DissoMaster™ printout, and does not attach other exhibits referenced in the objections. To give Anthony the benefit of the doubt, we nonetheless granted his request to take judicial notice of and/or augment the record with exhibit 1.

Anthony also attached as exhibit 3 a "Renewed Request for a Hearing Regarding the Transfer of this case from Department 79." That document is not file-stamped and does not contain a proof of service. It includes an unsigned version of the same Cole

---

[5] We denied Anthony's request to take judicial notice of, or to augment the record with, exhibit 3C.

[6] We granted Anthony's request to augment the record with this excerpt from the February 6, 2015 hearing. We also granted his request to augment the record with exhibit 3A, a January 24, 2015 notice to attorneys that Judge Lewis had changed courtrooms and that "[a]ny case currently assigned to Judge Trent Lewis that will be heard in Department 309 will be notified."

10

declaration (exhibit 9) of which we previously refused to take judicial notice (order dated March 12, 2015). On March 25, 2015, we thus declined to take judicial notice of, or augment the record with, exhibit 3.

## DISCUSSION

### Appellant has the burden to demonstrate error

An appellant's responsibility on appeal is affirmatively to demonstrate error and support his or her argument by citation to the record and supporting legal authority. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.)

We examine Anthony's arguments, keeping in mind that we are not required to review undeveloped claims or to make arguments for him. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) When a brief fails to cite the applicable legal authority in support of an argument, the argument is forfeited. (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948.) Similarly, a party's failure to support an argument with citation to the record results in waiver of the argument. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) These rules apply to self-represented and represented parties. (*City of Los Angeles v. Glair* (2007) 153 Cal.App.4th 813, 819 [self-represented litigant held to same standard as litigant represented by counsel].)

### Denial of a disqualification request is not an appealable order

Anthony argues that Judge Lewis erred in refusing to recuse himself because he was biased as a result of Anthony's lawsuit in San Diego. This was reflected in Judge Lewis's "unfair" custody and support orders. Anthony contends that the Judicial Council appointee, Orange County Superior Court Judge David A. Thompson, who heard the disqualification matter, was "equally biased." Anthony asserts that Judge Lewis was corrupt and biased because he received allegedly unconstitutional supplemental benefits from the county. In making this argument, Anthony cites to a federal district court judge's decision to recuse himself in a suit challenging these benefits because the federal judge had received the benefits for several years as a superior court judge.

If a judge who should disqualify himself fails to do so, a party may file a written verified statement objecting to trial before the judge and setting forth the facts

11

constituting the grounds for disqualification. (§ 170.3, subd. (c)(1).) The challenged judge may file either a consent to disqualification or a written verified answer. (§ 170.3, subd. (c)(3).) The question of disqualification "shall" be determined by a judge agreed upon by the parties, or in the absence of such an agreement, before a judge selected by the Chairperson of the Judicial Council. (§ 170.3, subd. (c)(5).) The question of disqualification of a judge is not an appealable order and may be reviewed only by petitioning the appellate court for a writ of mandate within 10 days after service of written notice of entry of the lower court's order denying disqualification. (§ 170.3, subd. (d); *People v. Panah* (2005) 35 Cal.4th 395, 444.)

As described above, Anthony filed three requests for disqualification of Judge Lewis on the basis that Anthony had filed a lawsuit against Judge Lewis challenging his receipt of supplemental judicial benefits from the County of Los Angeles or that he failed to rule on Anthony's recent motion under Code of Civil Procedure section 170.6.[7] These requests were denied at the trial level and rejected on the appellate level when the appellate court denied Anthony's petitions for a writ of mandate. Anthony cannot resurrect his disqualification claims by way of this appeal.

Anthony cites the Fourth District's recent opinion in *In re Marriage of M.A. & M.A.* (2015) 234 Cal.App.4th 894 for the proposition that he may challenge the family court's recent disqualification ruling by way of appeal. That case is inapposite because, there, the commissioner proceeded to rule on the merits of the case without first employing the procedures required by the Code of Civil Procedure when a litigant seeks to disqualify a judicial officer. In the words of the Fourth District, it was reviewing "the import of the court's failure to act on the validity of the court's subsequent orders." (*Id.* at p. 903, fn. 5.) Anthony has failed to demonstrate that, here, Judge Lewis did not rule on Anthony's most recent motion to disqualify him under Code of Civil Procedure

---

[7] As noted *ante*, Anthony has failed to demonstrate that he recently filed a challenge under Code of Civil Procedure section 170.1.

section 170.6 after Judge Lewis moved to department 309, despite our having given Anthony ample opportunity to prove otherwise.

In an effort to assist Anthony as a self-represented litigant to understand better the earlier disqualification rulings, we further explain that in *Sturgeon v. County of Los Angeles* (2010) 191 Cal.App.4th 344 the supplemental benefits that Los Angeles County Superior Court judges receive were held to be constitutional after the Legislature passed legislation authorizing those benefits. To the extent Anthony challenges the Judicial Council appointee, Orange County Superior Court Judge David A. Thompson, who heard the disqualification matter, that challenge does not comport with the applicable legal principles. Under section 170.3, subdivision (c)(5), the Chairperson of the Judicial Council is required to select the judge to decide the disqualification request absent the parties' agreement on a judge to make that determination. In addition, "No challenge . . . may be made against the judge selected to decide the question of disqualification." (§ 170.3, subd. (c)(5).)

**Anthony's Bias Claims**

Anthony claims that Judge Lewis's gender bias and bias in favor of Beverly Hills lawyers resulted in an unfair judgment. Anthony contends Judge Lewis's bias was exhibited by the "false domestic violence action by the Court," Judge Lewis's "'partnership' with the Child Support Enforcement agency and the LA County Domestic Violence Council," other cases in which Judge Lewis exhibited bias, the intended decision, Judge Lewis's retaliation for the civil suit filed by Anthony against him, Judge Lewis's allowing Suzana to miss court dates but refusing to give Anthony extensions of time, and Judge Lewis's allowing Suzana's Beverly Hills attorney to convert "a simple matter into a complex legal issue" but faulting Anthony for litigating "'at every turn with Suzana about certain matters that could have been easily resolved.'"

Even if we construe the latter allegations of gender and attorney bias as grounds for disqualification distinct from those Anthony previously raised, his failure to raise them below bars him from asserting them on appeal for the first time. A party must file a disqualification statement "'at the *earliest practicable opportunity after discovery of the*

13

*facts* constituting the ground for disqualification.' (Code Civ. Proc., § 170.3, subd. (c)(1), italics added.) Failure to comply with this requirement constitutes an implied waiver of the disqualification. [Citations.] The matter cannot then be raised for the first time on appeal. [Citation.]" (*In re Steven O.* (1991) 229 Cal.App.3d 46, 54.) "This promptness requirement is not to be taken lightly, especially when the party delays in challenging the judge until after judgment." (*Id.* at p. 55.)

With an eye toward liberal construction of Anthony's arguments, we construe them as attacks on the substance of the judgment itself and address each of Anthony's arguments in turn.

## Anthony failed to demonstrate error regarding the family court's findings

### Standard of review

We review express and implied findings of fact made by the trial court for substantial evidence. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501.) We must determine whether there is substantial evidence, contradicted or uncontradicted, that supports the court's decision. (*Ibid.*) "Substantial evidence is evidence of ponderable legal significance, reasonable in nature, credible, and of solid value. [Citation.]" (*Ibid.*) On review, we "will not reweigh the evidence nor reassess the credibility of witnesses." (*Anderson v. State Personnel Bd.* (1980) 103 Cal.App.3d 242, 251.) "All factual matters must be viewed in favor of the prevailing party and in support of the judgment. All conflicts in the evidence must be resolved in favor of the judgment." (*Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 58.)

### Spousal support findings

Anthony claims the trial court erred in failing to order Anthony to receive spousal support, particularly when his ex-spouse was the higher earner. Anthony argues Judge Lewis did not want to order Suzana to pay spousal support because he was "loathe to order any woman to pay spousal support," as demonstrated by his "'partnership' with the Child Support Enforcement agency and the LA Domestic Violence Council." He criticized Judge Lewis for "conflat[ing]" child and spousal support and improperly

14

weighing relative income based on Suzana's more expensive city of residence in making his child support findings.

The judgment terminated jurisdiction over spousal support to Anthony and Suzana "based on all the reasons set forth in the Court's Statement of Decision and Orders Thereon upon which this Judgment is based." As noted above, the record does not contain this document and we have not been able to locate it on the superior court's docket. Anthony, however, refers to the intended decision as support for his argument. In the interest of full consideration of Anthony's arguments, we review the family court's findings as expressed in the intended decision.

In that decision, the family court divested itself of jurisdiction to award support because the parties were substantially self-supporting and in good health; Suzana, the higher income earner, had more responsibility in terms of time in caring for the couple's daughter; the marriage was not long; Anthony had committed domestic violence against Suzana; and the case involved an extreme level of conflict leading to the conclusion that it was in the best interest of the child to terminate jurisdiction over spousal support. We observe that Anthony and Suzana testified at length at trial on the issue of spousal support.

Anthony has not demonstrated that these findings were not supported by substantial evidence. Rather, he merely cites to portions of testimony contained in the record in which Suzana testified as to purchasing a car, her clothing budget, purchases for their daughter, and her monthly mortgage and credit card payments. His reference to select portions of Suzana's testimony does not establish that the trial court's findings that the parties were substantially self-supporting or that Suzana, the higher earner, had more responsibility in caring for the daughter, were not supported by substantial evidence.

He also refers to a document contained in the record entitled, "Respondent's Position on Spousal Support and Modification of Child Support," in which he claims he was unemployed much of 2008 and his severance package constituted his main income. We note that the document does not bear a file stamp or any other indication that it was ever filed. Nor does it appear to be a declaration or otherwise admissible testimony. In

15

addition, to the extent Anthony asks us to reweigh the evidence, we cannot do so based on the standards of appellate review set forth above. Indeed, we are required to resolve all credibility disputes in favor of the judgment.

Regarding Anthony's argument that Judge Lewis was somehow predisposed not to make women pay spousal support, we observe that our review of the record demonstrates that Judge Lewis was even-handed in his treatment of the parties. At several junctures at trial, Judge Lewis explained legal concepts and procedures to Anthony, who was self-represented, including the difference in criminal and civil burdens of proof, the difference between evidence and argument, and hearsay and other evidentiary concepts; counseled him on protecting his Fifth Amendment rights, which arose regarding the terms of the restraining order; and was generally gracious and understanding as to disputes fueled by a failed marital relationship. Far from preferring "Beverly Hills" lawyers, he observed on the record that court proceedings had improved when one such lawyer had stopped representing Suzana. Indeed, Judge Lewis included this observation in his intended decision, in which he criticized that attorney for losing "his way in handling this case by a style and manner that conflated rather than minimized conflict."

**Child support calculation**

Anthony asserts regarding Judge Lewis's child support findings that the judge (1) was biased in favor of Suzana; (2) did not require her to document her claim of $1,000 per month in childcare expenses, which Anthony said were too high when "low-cost YMCA after-school care [was] available"; (3) improperly "rounded-up" certain figures; and (4) improperly found Suzana had more custody time because "his evaluator-approved custody order was so complicated that the parties argued over the percentage to be used for the child support calculator tools."

The judgment recites the evidence on which the family court's custody decision was made: income and expense declarations, testimony, and other evidence at trial. Anthony does not cite any income and expense declarations, testimony, or other evidence that would demonstrate that the court's child custody findings were not supported by

16

substantial evidence. Thus, his arguments are just that, and give us no basis for finding error on the part of the family court.

### Breach of fiduciary duty findings

Anthony claims the trial court did not sufficiently weigh Suzana's "violations of her fiduciary duty to the community and her impeachment issues." He faults the family court for not addressing Suzana's "false or perjured testimony" and unfairly resolving the breach of fiduciary issues in favor of Suzana. According to Anthony, Suzana's fiduciary breaches "are too numerous and not addressed by the Court's spreadsheet-format of the financial judgment." He asks us to review the record to "take notice" of Suzana's extensive fiduciary breaches, referring to what appear to be written statements he had submitted to the trial court regarding Suzana's alleged fiduciary breaches.

We note that Anthony and Suzana testified at trial. To the extent Anthony asks us to reweigh the evidence and reassess the credibility of the witnesses, we cannot do so. (*Anderson v. State Personnel Board*, *supra*, 103 Cal.App.3d at p. 251.) "[All] factual matters must be viewed in favor of the prevailing party and in support of the judgment." (*Turman v. Turning Point of Central California, Inc.*, *supra*, 191 Cal.App.4th 53, 58.)

It is not entirely clear to what statements Anthony is referring, but they appear to be allegations that Suzana destroyed important documents. We observe, however, that none of Anthony's arguments establishes that the trial court erred in concluding that Anthony failed to demonstrate by a preponderance of the evidence that the Beryl Street property could have been sold at a more advantageous price absent Suzana's purported breach of fiduciary duty.

Anthony has failed to demonstrate how the family court erred other than criticizing the court for not crediting Anthony's evidence. He thus has failed to carry his burden to show error, given the substantial evidence standard of review we are legally bound to apply.

**Community property findings**

### *Down payment on Beryl Street property*

We observe that "[p]roperty acquired by purchase during a marriage is presumed to be community property, and the burden is on the spouse asserting its separate character to overcome the presumption. [Citations.] The presumption applies when a husband purchases property during the marriage with funds from an undisclosed or disputed source, such as an account or fund in which he has commingled his separate funds with community funds." (*See v. See* (1966) 64 Cal.2d 778, 783.) "If funds used for acquisitions during marriage cannot otherwise be traced to their source and the husband who has commingled property is unable to establish that there was a deficit in the community accounts when the assets were purchased, the presumption controls that property acquired by purchase during marriage is community property." (*Id*. at p. 784; Fam. Code, § 2640, subd. (b) [a party shall be reimbursed for contributions to acquisition of property of community property estate to the extent the party traces the contributions to a separate property source].)

Anthony argues that he traced his separate property to the down payment for the Beryl Street property, and that funds were only "briefly comingled." He refers to Suzana's trial brief, in which Suzana acknowledged that Anthony bought a condominium in San Diego prior to marriage with separate property. She further represented that the parties resided in the condominium, making monthly mortgage payments from a community property account until the condominium was sold in 2003. The proceeds from the sale of the condominium were deposited into a community property account, and a down payment from that account was made on the Beryl Street property. Suzana further acknowledged that Anthony "has a viable [Family Code section] 2640 claim against the Beryl Street property, despite [his] failure to identify and provide documents that prove his claim." She expressed skepticism that he would be able to "trace such a claim."

Thus, it was undisputed at trial that Anthony had purchased the condominium with his separate property. The dispute at trial was created when Anthony had allowed

18

separate and community funds to be comingled before purchasing the Beryl Street property and focused on whether Anthony could trace his admitted separate property into the down payment for the Beryl Street property.

Anthony argues that Suzana's "use of a post-trial spreadsheet footnote" was accepted by Judge Lewis "to ingratiate himself with the Beverly Hills lawyers appearing before him." He cites "[t]he use of the First In First Out (FIFO) approach" was "clearly intended by [Suzana] as a post-trial trick to convert the separate property into community property," and that use of "the Last In First Out (LIFO) approach" would have rendered "the full $110,792 as separate property."

Anthony does not identify any document in the record containing this "footnote" or discuss the evidence that led to Judge Lewis's finding that "Anthony failed to trace his separate property claim in the Beryl proceeds by a preponderance of the evidence" beyond an amount ($31,906.20) that Suzana "acknowledged." This evidence included Anthony's and Suzana's trial testimony and documents admitted at trial.

As an appellate court, we do not ask whether we would have weighed the evidence in the same way had we been the family court. The standards of review governing orderly procedure require us to review for substantial evidence and to view all "factual matters . . . in favor of the prevailing party and in support of the judgment." (*Turman v. Turning Point of Central California, Inc.*, *supra*, 191 Cal.App.4th 53, 58.) Under these standards of review, Anthony has failed to demonstrate error as to the family court's findings regarding the down payment for the Beryl Street property.

### *Fidelity Rollover IRA*

Anthony had a Fidelity Rollover IRA into which his 401(k) retirement plan from his former employer, Hitachi Data Systems (Hitachi), was rolled in 2008. Anthony had started working for Hitachi a few months prior to his marriage to Suzana in 2001 and left Hitachi's employ in 2008.

The family court found that Anthony had withdrawn $30,000 from that account to buy undeveloped real property in San Diego without the court's consent, and that

Anthony had failed "to trace his separate property claim" in the Fidelity Rollover IRA. Accordingly, half of that account should be transferred into an IRA in Suzana's name.

Anthony contends that in making those findings the family court ignored $30,000 of his separate property because it "lost Appellant's exhibits and Appellant was unable to reproduce the documents on short order during trial." Accordingly, the family court should have credited his exhibits, specifically, a retirement savings statement from Hitachi Data Systems for the January 1, 2001 to May 31, 2001 time period, with a handwritten circle around a balance of $4,644.19, and a Fidelity investment report for the February 1, 2012 to February 29, 2012 time period with the handwritten notations "Hitachi" and "Oracle," and an arrow pointing to the handwritten term "Hitachi." Anthony contends that he acquired "Oracle [stock]" prior to the marriage and that the stock's value as reflected on the latter exhibits was $24,650.

Once again, as an appellate court we must credit all evidence in support of the judgment in determining whether there was substantial evidence to support that judgment. Anthony thus cannot carry the day merely by faulting the family court for not crediting his evidence. The record reveals testimony and exhibits devoted to the property disposition and characterization issues before the family court. We cannot say that based on that record, substantial evidence did not support the family court's conclusion that Anthony had failed to trace into separate property $30,000 then residing in the Fidelity Rollover IRA account.

### *Federal and state taxes*

Anthony contends that the "lengthy commentary in the Statement of Decision on date of separation was a tip-off on the continued punishment of" Anthony. Without citing to the record, Anthony appears to be contending that he paid approximately $6,000 in federal taxes out of his own pocket that in actuality were a community debt. The family court erred in not reimbursing him for this community debt; indeed, he contends that the court "made no mention of the returns" in the decision MEMO."

Anthony fails to provide any citation to the record in support of his contention that the trial court ignored his tax reimbursement claim or that it was required to find in

20

Anthony's favor on that claim. This failure precludes us from considering his claim because he has not given us the evidentiary data with which to determine if any error was committed.

### *The trial court's failure to appoint a lawyer for Anthony*

Anthony argues that the trial court denied his two requests for appointment of counsel. He contends that he needed counsel after the court lost documents provided by his prior attorney and that he "had to recreate all documentation for an extremely complex financial trial without any legal background." He cites *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507 (*Davenport*) in arguing that "Judge Lewis [was required to] provide access to an attorney for the real-time processing of large numbers of exhibits during trial." He also cites the parties' failure to participate in a meet and confer protocol, apparently for stipulations regarding trial exhibits, that he contends would have reduced the volume of exhibits needing his review.

*Davenport* does not support Anthony's contentions, and he fails to cite any legal authority that would have required the family court to appoint legal counsel for him. The issue in *Davenport* was whether an award of attorney fees as a sanction under Family Code section 271[8] was supported by substantial evidence. (194 Cal.App.4th at pp. 1530–1532.)

With respect to the meet and confer protocol, at trial Suzana's counsel informed the family court that the parties had conferred before Judge Goldberg with respect to

---

[8] Family Code section 271, subdivision (a) provides: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

21

some exhibits, the parties had not met regarding the remainder, and Judge Goldberg "eventually" determined that the meet and confer had occurred or "relieved" them of the obligation to so meet. We fail to discern how this citation to the record demonstrates that the family court committed error in not appointing counsel for Anthony. For all these reasons, Anthony has failed to demonstrate error in the family court's denial of his requests for appointed counsel.

### *Payment for custody evaluator*

Anthony contends Judge Lewis appointed a close friend, a Dr. Lund, as a custody evaluator in violation of the California Code of Judicial Ethics, and that the evaluator was expensive. He provides no evidence, let alone citation to the record in support of this accusation. He appears to raise this issue as part of his dissatisfaction with the family court's apportionment of less than 50 percent child custody time to him with the attendant negative financial consequences of this apportionment. As noted above, Anthony has failed to demonstrate that the family court's child support findings were not supported by substantial evidence, and his challenge to Judge Lewis's ethics, unadorned by record citation, does not cause us to conclude otherwise.

### *The imposition of permanent restraining order*

Anthony claims that the family court "branded" him a "lifetime domestic violence perpetrator" based "only" on a video in which he is seen as pushing Suzana away after she thrust a video recorder in his face. As a result, the court imposed a "lifetime restraining order" that will "impair[] [his] co-parenting" rights and violates his Second Amendment and due process rights under the United States Constitution.

Anthony appears to misunderstand the record in making these arguments. It is true that the family court found that a permanent restraining order was necessary, but not just because of the aforementioned video. Instead, the court based its ruling on Anthony's having firearms in his residence in violation of a restraining order the court had issued two years earlier; not going to court-ordered parenting classes and other courses, and "pretty strong language in . . . e-mail communications . . . that could cause a reasonable apprehension."

22

The family court recited in its intended decision that Suzana's testimony regarding Anthony's possession of firearms in violation of "this term of the prior order" was unrebutted. We cannot reassess credibility. The testimony of one witness, if believed, constitutes substantial evidence. Anthony, moreover, failed to direct us to any legal authority in support of his constitutional claims and has thus forfeited those claims as well. (*Bains v. Moores*, *supra*, 172 Cal.App.4th at p. 455.)

### *The admission of the Beryl Street stipulation into evidence*

Anthony argues that he entered into the Beryl Street stipulation on January 10, 2011, under duress and that "Exhibit 172 must be voided." Anthony argues that Judge Lewis rewarded Suzana's counsel's "bullying behavior by not rejecting Exhibit 172 as patently and inherently unfair." Anthony adds that "Exhibit 172 illustrates the treachery of the Beverly Hills lawyer looking for ways to subvert the will of the court to achieve settlement by the parties without court intervention," and that opposing counsel's abusive behavior forced Anthony's counsel to withdraw, making Anthony "an easy mark for any attorney and an obvious irritant to the court." Finally, Anthony claims that his former attorney challenged exhibits 1 through 107, and therefore exhibit 172 should not have been admitted.

Anthony was represented by counsel when both signed the Beryl Street stipulation. As described above, the stipulation assigned responsibility to Anthony for the mortgage and other expenses of the property until it was sold or Anthony vacated the property. The parties waived certain credits and allocated property tax obligations and the mortgage interest deduction. The parties also agreed that the terms of the stipulation would be included in a judgment.

Anthony provides no citation to the record of any objection to the admission of exhibit 172 on duress or any other ground. On the contrary, at trial when Anthony attempted to question Suzana regarding reimbursement of expenses he incurred in managing the Beryl Street property, the family court reminded him of exhibit 172 and queried whether that stipulation "takes away any issue of reimbursement related to the management of Beryl." Anthony agreed, and more important, did not assert duress or

23

any other objection that he is now asserting on appeal. By not objecting to exhibit 172 in the family court, he cannot raise it on appeal. (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 ["Failure to object to the ruling or proceeding is the most obvious type of implied waiver."].)

### *Attorney Fees*

Anthony argues "[t]he upcoming trial on fees and sanctions [pursuant to Family Code sections 2030 and 2032] offers no hope for [Anthony]." Anthony does not explain how this assertion requires reversal of the family court's judgment on support and property division. As noted earlier, the family court bifurcated the issue of attorney fees from the trial on property and support that produced the judgment at issue here. To the extent Anthony is predicting that the outcome of the trial on attorney fees will be unfair, that claim is premature and not properly before us.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


BENDIX, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.


---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24